**In re AUGIE/RESTIVO BAKING COM-PANY, LTD., Augie's Baking Company, Ltd., Debtors.**

**Nos. 086–60208–21, 086–60262–21.**

United States Bankruptcy Court, E.D. New York.

Feb. 4, 1988.

Sanford P. Rosen, New York City, for debtors.

Dewey, Ballantine, Bushby, Palmer & Woods by Ronald L. Cohen, New York City, for Creditors Committee.

Stroock, Stroock & Lavan by Daniel H. Golden, New York City, for Mfrs. Hanover Trust Co.

Mark Brandoff, New York City, for Credit Alliance & Leasing Service.

Pinks, Brooks, Stern & Arbeit by Steven G. Pinks, Hauppauge, N.Y., for Union Sav. Bank.

Jules V. Speciner, Great Neck, N.Y., for Leon's Bakery, Inc.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Augie/Restivo Baking Company, Ltd. ("Augie/Restivo") and Augie's Baking Company, Ltd. ("Augie's"), as debtors and debtors-in-possession (collectively "debtors"), are moving to substantively consolidate their Chapter 11 cases. The cases have already been procedurally consolidated. The Augie/Restivo unsecured creditors committee and Manufacturers Hanover Trust Company ("Manufacturers Hanover") support the motion. Union Savings Bank ("Union") and First Interstate Credit Alliance, Inc., formerly Credit Alliance Corporation ("Credit Alliance"), object to substantive consolidation, as does one individual creditor.

The order which the debtors are requesting will provide for (a) consolidation of the two Chapter 11 cases into a single case for all purposes; (b) merger of the assets and liabilities of Augie's and Augie/Restivo; (c) treating all claims filed in either of the two cases as having been filed in the consolidated case and expunging all duplicate claims for the same indebtedness; (d) eliminating and disallowing all intercompany claims; (e) eliminating all cross guarantees made by either company to pay the debts of the other; and (f) filing of a single Chapter 11 Plan of Reorganization for both corporations.

The present motion has been precipitated by the fact that a buyer, Leon's Bakery, Inc. ("Leon's") has committed itself to pay over $7 million for the assets of the debtors as a single going enterprise, provided these assets can be sold free and clear of liens, pursuant to the authorization of the Bankruptcy Court. Leon's is currently operating the business of the debtors. It is the

debtors' position that because their financial affairs are so intermingled, they cannot meet the conditions laid down by the buyer requiring confirmation of a plan, or plans, unless they are permitted the substantive consolidation they now seek. If they are unable to effect this sale, the likely alternative is piecemeal liquidation.

Until January 1, 1985, the two corporations, now known as Augie's and Augie/Restivo, were unrelated, independent enterprises. Augie's was the corporate vehicle through which three brothers, Agostino Moronese, Angelo Moronese and Nicholas Moronese, conducted a wholesale baking business in Long Island, outside the City of New York. Restivo Brothers Bakers, Inc., (now known as Augie/Restivo, but identified in this description of pre–1985 events as "Restivo"), was the corporate vehicle through which a different set of brothers, Louis D. Restivo and Louis A. Restivo, operated a wholesale baking and distribution business in the New York City metropolitan area.

Prior to 1985, Augie's was financed by Credit Alliance and Union. During 1980, it entered into two equipment lease and three security agreements with Credit Alliance. It also gave Credit Alliance two promissory notes dated, respectively, June 27, 1980 and July 24, 1984. The resulting indebtedness to Credit Alliance, still unpaid, was $415,000. As collateral, Credit Alliance received a security interest in Augie's machinery, equipment, goods, chattels, inventory, accounts and notes receivable and other personal property. In 1984, when Augie's was prospering and its financial statements showed it to be solvent [1], it embarked upon an expansion which ultimately led it to the bankruptcy court. It enlarged or built (the record is unclear) a new facility at 135 Oval Drive, Central Islip, New York ("the real property"). It financed this construction in part from loans by Union, to which it gave

mortgages in the face amount of $2,100,000. The debt secured by the mortgages has now grown to $2,955,010.45. On November 10, 1984, Augie's borrowed an additional $300,000 from Union, giving the latter a security interest in the same collateral as it had previously given Credit Alliance. The balance owed on this debt is now $365,006.99.

At the same time as Augie's was expanding its physical facilities, it was negotiating with the Restivo brothers the merger of their two operations into a single enterprise. Restivo at that time maintained its office and manufacturing facilities at 1633 Center Street, Ridgewood, New York. It financed its business through loans from Manufacturers Hanover, which held a first mortgage on its real property, as well as a security interest in its other assets.

On November 27, 1984, Augie's and Restivo entered into an agreement merging the two bakeries to become effective January 1, 1985. Pursuant to this agreement, the Moronese brothers exchanged all their stock in Augie's for 50 percent of the stock in Restivo, making Augie's a wholly owned subsidiary of Restivo. Subsequently the parent corporation changed its name to Augie/Restivo. Neither corporation was dissolved; both survived. Agostino Moronese became President of Augie/Restivo, Angelo Moronese was made Secretary, and Nicholas Moronese, Vice President. Louis D. Restivo was made Chairman and Louis A. Restivo, Vice President.

The two companies ceased to function as separate enterprises; all their activities were integrated into a single operation effective January 1, 1985. The Ridgewood building formerly owned by Restivo was sold. Manufacturers Hanover was paid approximately one million dollars out of the proceeds against a debt of approximately two million dollars. Some, or all, of the Restivo equipment (the record is unclear)

---

1. A financial statement for Augie's dated June 30, 1984 and given Restivo when the two sets of brothers merged their businesses, showed that as of that date, Augie's had assets of $5,172,051, liabilities of $4,096,243, shareholder's equity of $1,014,371, accounts payable of $747,717, accounts receivable of $519,419, and inventory valued at $604,035. The total value of property, plant and equipment was $4,752,406. Updated, October 1984 schedules showed that Augie's accounts receivable totaled $639,055, accounts payable totaled $792,251. The auction value of its machinery and equipment was $1,184,474.

was transferred to Augie's premises, where all the operations of the business continued: manufacturing, distribution and selling. After the merger, the two companies maintained only a single set of books and records under the name of Augie/Restivo. Consolidated financial statements were issued in that name.

From the effective date of the merger, all business was conducted in the name of Augie/Restivo. All customers and suppliers were sent a letter advising them that henceforth they would be doing business with Augie/Restivo. Augie's ceased to have any employees. All wages were paid by Augie/Restivo. All invoices and checks were issued in that name. All operating expenses were met from the moneys generated by Augie/Restivo, except that Augie's accounts payable for the period prior to the merger were first paid out of the receipts from Augie's pre-merger accounts receivable. At the present time there are no uncollected accounts receivable belonging to Augie's from the pre-merger period except for some $70,000 due on certain school contracts. These are still outstanding for reasons not pertinent to this opinion. All of Augie's pre-merger debts have presumably been satisfied.

No formal transfer of any assets has ever taken place. Title to the Central Islip property remains in Augie's, as does title to whatever equipment Augie's possessed on the date of merger. Augie/Restivo has never paid anything to Augie's for the use of the building or its equipment. The cost of heating the building, as well as some additional construction costs and all other post-merger liabilities, have been paid out of the proceeds of the operations of Augie/Restivo.

In April 1985, Manufacturers Hanover lent Augie/Restivo $750,000. It received back a guarantee of the debt from Augie's and a security interest in all Augie/Restivo's accounts receivable, inventory, furniture, fixtures, machinery and equipment. Augie's guarantee was also secured by a $750,000 mortgage on the Central Islip real property, subordinate to the earlier mortgages given Union. The total debt to Manufacturers Hanover now exceeds $2,900,000.

The merged enterprise proved to be a financial disaster. The expansion proved fatal to the prosperity that Augie's had previously been enjoying. On March 27, 1986, an involuntary Chapter 11 petition was filed against Augie/Restivo pursuant to 11 U.S.C. § 303 of the Bankruptcy Code. An amended involuntary petition was filed on April 2, 1986. Augie/Restivo consented to entry of an order for relief under Chapter 11 on April 16, 1986. Augie's filed a voluntary petition under Chapter 11 that same day. Each of the debtors was continued as debtors-in-possession under 11 U.S.C. § 1107. The two cases were consolidated for procedural purposes on April 16, 1986.

The schedules filed by Augie's and Augie/Restivo showed a tax liability of approximately $1,000,000 to the Internal Revenue Service and to New York State for failure to pay withholding taxes during 1985 and 1986. The schedules described these taxes as joint and several liabilities of the two debtors. Augie/Restivo's schedules showed an additional three million dollars as owed to unsecured trade creditors located throughout the New York metropolitan area, including Long Island.

Following the Chapter 11 filings, the debtors continued to believe that rehabilitation was feasible. They were able to continue doing business because Manufacturers Hanover, which held a security interest in the debtors' accounts receivable, permitted proceeds from the collection of their accounts to be used to fund the debtors' operations. As a result, the total value of the accounts receivable is less than when these cases began. Furthermore, unpaid administrative debts in the amount of $400,000 have been generated.

On September 30, 1987, in contemplation of a sale to Leon's of the merged enterprise, the debtors entered into a court approved agreement, pursuant to which Leon's undertook to manage the debtors' bakery. Subsequently, on November 30, 1987, Leon's agreed to purchase all the debtors' assets for $7.3 million, conditioned

upon confirmation of a Chapter 11 plan, or plans. To meet this condition, the debtors have filed a consolidated plan of reorganization which will be withdrawn if the motion for substantive consolidation is denied.

The consolidated plan provides for complete satisfaction of the mortgages on Augie's real property. Union will be paid the full $2.95 million owed on its mortgages. Manufacturers Hanover will be paid $750,-000 on its mortgage. Taxes will be paid over the six years permitted by the Code. All claims secured by assets other than real property will be paid to the extent that the value of the collateral securing those claims is equal to the debt it seeks to secure. To the extent any portion of a secured debt remains unsecured, the creditor will share in the distribution to general creditors. The consolidated plan promises to pay ten cents on the dollar on unsecured claims.

What this means is that most of the debt to Union not secured by real property and the debts to Credit Alliance will not be paid. Union and Credit Alliance will receive only the present value of whatever equipment remains in the possession of the debtors identifiable as belonging to Augie's pre-merger. These assets are stated as having negligible value. They will also receive the uncollected $70,000 in accounts receivable. This Court is not prejudging what else either may have a right to claim.

Both Manufacturers Hanover and the unsecured creditors committee support the consolidation requested by the debtors. They contend that consolidation of the assets and liabilities is appropriate because the two debtors have been operating as a single enterprise since 1985 and that all post-merger receivables and liabilities are a product of the joint enterprise. They point to the fact that the money to fund the plan arises from a sale of the entire business as an on-going enterprise, kept going by both debtors. They contend that the prejudice which Union and Credit Alliance claim they would suffer from the proposed consolidation is the product of what has previously taken place. They argue that substantive consolidation will not impair either Union or Credit Alliance to the extent that either has a valid perfected security interest. The collateral will be valued and paid to them in cash. To the extent that accounts receivable have dissipated or equipment and machinery has depreciated since the time of the merger, they argue that both secured creditors took either a calculated business risk in failing to pursue foreclosure remedies or were less than vigilant in protecting their interests. They argue that since unsecured creditors also took risks in continuing to extend trade credit to the consolidated company, there is no reason why the secured creditors should benefit by being bailed out of the consequences of their gamble to the detriment of all other creditors. They contend that in view of this background, all creditors should share in the consolidated assets of Augie/Restivo.

Neither Union nor Credit Alliance has suggested any way in which the conditions necessary to make the proposed sale of the integrated enterprise can be met absent the substantive consolidation sought by the debtors. They nevertheless oppose such consolidation. Based on the hearing held by this Court, their objections appear to be predicated essentially on three grounds: First, at the time they made their loans to Augie's, it was a solvent corporation, the loans were fully secured, they in no way relied on the credit of Restivo, which at the time had no relationship with Augie's and they, therefore, should not now be paid less than they would have received in 1984 pre-merger; second, the bulk of the purchase price for the integrated enterprise "should be paid for the benefit of creditors of Augie's Baking Company, Ltd."—of which they are virtually the only creditors remaining—"as that is the entity which owns the bulk of the physical assets being sold;" third, were Augie's to be liquidated today, Augie's unsecured creditors would realize a substantial dividend far in excess of the ten cents to the dollar that the debtors propose to pay and they might even be paid in full. (Union's Objection to Motion for Consolidation, p. 10).

Taking these contentions in turn, the fact that Augie's may have been solvent in

1980, or 1984, can scarcely be considered dispositive in 1988. Many of the assets that Augie's owned in 1984, such as accounts receivable and inventory are now gone. If Union and Credit Alliance believed their security interests were adversely affected by the disposition Augie's made of this collateral, remedies were available at that time. Denying consolidation will not restore the former accounts receivable, or the inventory, or any other physical assets that are now gone.

The claim that the creditors of Augie's should receive preferential treatment is closely related to the contention that in liquidation they would receive more than they will now be paid. Both rest on the premise that the assets of the integrated enterprise belong to Augie's and the liabilities to Restivo. That premise is mistaken. It should be noted that Leon's has made no allocation of the purchase price to specific assets. It is paying $7.3 million for the ongoing enterprise, with no breakdown as between the building, the equipment, the routes or goodwill. Of the total purchase price, better than 40 percent will be distributed to pay liens on the physical assets to which Augie's holds title, the land and the equipment. Close to $3 million will go to Union, $750,000 to Manufacturers Hanover and some as yet undetermined amount for the equipment. There is no basis for thinking this allocation results in inadequate compensation for the physical assets.

The contention that Union and Credit Alliance would receive more if Augie's were liquidated rests upon pure speculation and a pyramid of assumptions. It assumes first that Augie's real property would be sold at a figure approximating the four million dollars which the debtors at various times during the past year have claimed to be its fair market value. (The value of the equipment can be disregarded for present purposes since under the proposed plan the security interests in that collateral will be paid their present value.) It further assumes further that the second mortgage held by Manufacturers Hanover in the amount of $750,000 can be voided as a fraudulent conveyance. Third, it assumes that the tax authorities will be unable to assert a priority for their more than one million dollar tax claim because Augie's had no employees after January 1, 1985. Fourth, it assumes that those who became trade creditors of Augie/Restivo after January 1, 1985 will not be able to make any claim against Augie's. Each one of these assumptions is most questionable.

That Augie's building was represented to have a fair market value in 1987 of four million dollars is no guarantee that in a forced sale it will bring anything near that figure or even that it will cover the mortgages which now total approximately $3,750,000. The building is a special purpose building, constructed to serve as a bakery. The debtors lack the money to maintain it while they look for a good price. Although Union has repeatedly maintained that the second mortgage held by Manufacturers Hanover is a fraudulent conveyance, no serious effort has been made to demonstrate this to be the case or even to spell out why a mortgage given in exchange for $750,000 advanced to an affiliated corporation and used, in part, for improvement of the mortgaged building is voidable as a fraudulent transfer. Union has been in possession of all the relevant facts regarding the financial accommodations with Manufacturers Hanover. It nonetheless waited until August 21, 1987, after negotiations to sell the entire bakery business had begun, before demanding that Augie's bring an action pursuant to Section 548 of the Bankruptcy Code to set aside Manufacturers Hanover's mortgage.

It is equally questionable whether Augie's can escape liability for withholding taxes due on wages of employees driving trucks owned or leased by it, delivering its products.

Most questionable of all is whether Augie's could escape liability for post-merger debts which presumably make up a large part of the three million dollars in unsecured obligations and of the $400,000 in administration debt. While Union and Alliance may not have relied on the credit of Restivo or Augie/Restivo in the loans they made Augie's, the holders of this trade debt certainly relied on the fact that in

dealing with Augie/Restivo they were dealing with a self-described successor to Augie's and were thereby led to believe that they could look to Augie's for payment.

The arguments of Union and Credit Alliance can be reduced to the following: If substantive consolidation is not permitted and if Augie's Chapter 11 proceeding continues independently; then, if an auction sale of its property realizes in excess of $3,750,000, and if Manufacturers Hanover's mortgage is voided as a fraudulent transfer, and if the taxing authorities are unable to establish any liability in Augie's for withholding taxes, and if the creditors who extended credit to Augie/Restivo are barred from making any claim against Augie's, then if *all* these events occur, the creditors of Augie's will receive more than the ten cents on the dollar they are slated to receive if the two proceedings are substantively consolidated.

One further argument made by Union and Credit Alliance should be noted. They contend that Augie's has a cause of action against Augie/Restivo for use and occupation of its premises and use of its equipment, which will be lost if the cases are consolidated. This argument assumes that it is possible to balance the credits and debits between the two companies, whereas the very basis of the motion to consolidate is that this is an impossibility. But even more to the point, the contention is virtually frivolous. A cause of action against Augie/Restivo, absent consolidation, has a value of close to zero. From what assets would it be collected? With what other claimants would it compete? For all concerned, the sale to Leon's offers the greatest return and that requires substantive consolidation of the present debtors.

Substantive consolidation treats the assets of all debtors as common assets, satisfies liabilities from a common fund and eliminates all intercompany claims and guarantees made by the debtor companies. *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966). Substantive consolidation arises out of the equity power of the bankruptcy court. *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1000 (2d Cir. 1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). Although not explicitly codified by statute, courts have held that the power is authorized under § 105(a) of the Bankruptcy Code. *E.g., In re Donut Queen, Ltd.*, 41 B.R. 706, 708 (Bankr.E.D.N.Y.1984); *In re Richton International Corporation*, 12 B.R. 555, 557 (Bankr.S.D.N.Y.1981).

While the power to consolidate must be used sparingly to avoid undue prejudice to creditors, *see Chemical Bank v. Kheel*, 369 F.2d at 847, its exercise is appropriate when interrelationships among related debtors threatens to deny realization of any net assets for all creditors. *Id.* Courts have recognized a recent, increased need for substantive consolidation owing to the increased prevalence of parent and subsidiary corporations with interlocking directorates. *See In re F.A. Potts & Co., Inc.*, 23 B.R. 569, 571 (Bankr.E.D.Pa.1982); *Richton*, 12 B.R. at 557; *In re Food Fair, Inc.*, 10 B.R. 123, 126 (Bankr.S.D.N.Y. 1981); *In re Vecco Construction Industry, Inc.*, 4 B.R. 407, 409 (Bankr.E.D.Va.1980); *Matter of Commercial Envelope Manufacturing Co., Inc.*, 3 B.C.D. 647, 648 (Bankr.S.D.N.Y.1977).

In deciding whether cases should be substantively consolidated various factors have been considered. In *Chemical Bank v. Kheel*, 369 F.2d, *supra* at 846, the Second Circuit found the following circumstances justified consolidation: (1) the debtor corporations were operated as a single unit with little or no attention paid to formalities observed in independent corporations; (2) the officers and directors of all the corporations were substantially the same; (3) funds were shifted back and forth between corporations in a complex manner and pooled together; (4) loans were made back and forth among the companies; (5) companies borrowed money to pay the obligations of others; (6) withdrawals and payments made to and from corporate accounts were insufficiently recorded on the corporate books; and (7) auditing the corporations' financial condition and intercompany relationships would have entailed

great time and expense without assurance of success.

Bankruptcy Courts have culled from *Kheel* and other key Second Circuit cases eight elements relevant to substantive consolidation:

(1) the presence or absence of consolidated financial statements;

(2) the unity of interests and ownership between the various corporate entities;

(3) the existence of parent and inter-corporate guarantees or loans;

(4) the degree of difficulty in segregating and ascertaining individual assets and liability;

(5) the transfer of assets, without formal observance of corporate formalities;

(6) the co-mingling of assets and business functions;

(7) the profitability of consolidation at a single physical location; and

(8) whether substantive consolidation will yield an equitable treatment of creditors without undue prejudice to any particular group.

*Donut Queen,* 41 B.R. at 709; *Richton,* 12 B.R. at 558; *Food Fair,* 10 B.R. at 126.

These criteria, however, are not mechanically applied. *Donut Queen,* 41 B.R. at 709. Rather, consolidation hinges on balancing the equities favoring consolidation against the equities favoring continuation of separate bankruptcy estates. *Id.; Richton,* 12 B.R. at 558. Moreover, "the inequities it [consolidation] involves must be heavily outweighed by practical considerations such as the accounting difficulties (and expense) which may occur where the interrelationships of the corporate group are highly complex, or perhaps untraceable." *Continental Vending Machine,* 517 F.2d at 1001. Finally, "where the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any net assets for all the creditors, equity is not helpless to reach a rough approximation of justice to some rather than deny any to all." *Chemical Bank v. Kheel,* 369 F.2d at 847. An authoritative text on bankruptcy observes, "Substantive consolidation cases are to a great degree *sui generis.*" 5 Collier on Bankruptcy, ¶ 1100.06, p. 1100–33 (15th Ed. 1985). Thus precedents are of limited value. Instead, the Court must determine what equity requires.

In this case, the Court has no doubt that by consolidating the assets and liabilities of Restivo, Augie's and Augie/Restivo is the fairest outcome for all concerned. Augie's and Augie/Restivo have operated as a single entity since January 1, 1985. They have shared officers and directors. Funds and assets have been pooled. Both corporations have shared equipment and machinery. Cash assets lent to Augie/Restivo have been used to improve real property owned by Augie's. Augie's has guaranteed Augie/Restivo's indebtedness and secured that indebtedness by giving a second mortgage on its real estate. The merged entity issued consolidated financial statements and invited customers and suppliers to deal with it as a successor to both Augie's and Restivo. Furthermore, there is a unity of interests and ownership between the two corporate entities since Augie's is a wholly owned subsidiary of Augie/Restivo. *See Richton,* 12 B.R. at 558; *Food Fair,* 10 B.R. at 126. Finally, these affairs of these two enterprises have been so entangled as to render it doubtful if they could ever be unknotted.

For the reasons set forth at length earlier, the equities as strongly favor consolidation as do the factors which the courts have enumerated. *In re Flora Mira Candy Corporation,* 432 F.2d 1060 (2d Cir.1970) is not on point. Reliance on it is misplaced. *Flora Mir* involved an intentional scheme to defraud the shareholders of a company that was subsequently acquired by the debtor. *Id.* at 1061. Those circumstances are wholly absent here. In *Flora Mir,* the equities were strongly against consolidation. Here they favor it.

If Union and Credit Alliance believed themselves prejudiced by the *de facto* merger of Augie's and Restivo, they should have taken action during the three years that Augie/Restivo has been operating. Instead, they have stood by while the world at-large has dealt with Augie's and Restivo

as a single unit. In authorizing substantive consolidation, all the Court is doing is ratifying what has already taken place.

Therefore, the relief requested is granted.

Submit Order.