### In re AUGIE/RESTIVO BAKING COMPANY, LTD., Augie's Baking Company, Ltd., Debtors.

### Bankruptcy Nos. 086–60208–21, 086–60262–21.

United States Bankruptcy Court, E.D. New York.

March 3, 1988.

Sanford P. Rosen, New York City, for debtors.

Dewey, Ballantine, Bushby, Palmer & Woods, New York City, by Ronald L. Cohen, for Creditors Committee.

Stroock, Stroock & Lavan, New York City, by Daniel H. Golden, for Manufacturers Hanover Trust Co.

Pinks, Brooks, Stern & Arbeit, Hauppauge, N.Y., by Steven G. Pinks, for Union Sav. Bank.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The Union Savings Bank ("Union") is moving to compel the "debtor-in-possession" to bring an action to set aside as a fraudulent conveyance a mortgage given on April 19, 1985 by Augie's Baking Company, Ltd. ("Augies") to Manufacturers Hanover Trust Company ("MHTC").[1] Alternatively, Union seeks an order authorizing it to institute such an action on behalf of the creditors of Augie's or an order appointing a Chapter 11 Trustee for that purpose. Notice of the motion was given to all creditors.

The motion is opposed not only by both debtors in this newly consolidated proceeding, Augie's and Augie/Restivo Baking Company, Ltd. ("Augie/Restivo"), but also by MHTC and by the Creditors Committee of Augie/Restivo.

The Court, after hearing argument, denied the motion from the bench, and reserved its right to set forth its reasons in a written opinion. No one requested an evidentiary hearing and in the view of the Court, the hearing held was appropriate.

Many of the facts relevant to the present proceeding are set forth in the opinion of this Court dated February 4, 1988, 84 B.R. 315, approving the consolidation of the Chapter 11 proceedings involving Augie/Restivo and Augie's. Familiarity with that opinion will be assumed. In brief, the two wholesale baking companies, formerly known as Augie's Baking Company, Ltd. and Restivo Brothers Bakers, Inc., have been operating as a single enterprise since January 1, 1985 under the name Augie/Restivo Baking Company, Ltd. They have done so pursuant to an agreement by which Augie's Baking Company, Ltd. became a wholly owned subsidiary of Restivo Brothers Bakers, Inc. The combined enterprise changed its name to Augie/Restivo Baking Company, Ltd. and is now owned 50 percent by the former owners of Restivo Brothers Bakers, Inc. and 50 percent by the former owners of Augie's Baking Company, Ltd. The single economic enterprise doing business since January 1, 1985 has been operating from the premises owned by Augie's and all business has been carried on in the name of Augie/Restivo. The case was substantively consolidated by this Court on February 4, 1988 to facilitate the sale of the combined entity as a going concern to Leon's Bake Shop as part of a reorganization plan that would fully satisfy secured creditors and, at least, partially pay unsecured creditors.

As recited in the Court's earlier opinion, prior to the amalgamation of the two companies, Union had been financing Augie/Restivo and had taken back as collat-

---

**1.** It is unclear to whom Union, in its motion papers, is referring as the "debtor-in-possession." Until February 4, 1988, Augie's Baking Company, Ltd. ("Augie's") was the debtor and debtor-in-possession in a Chapter 11 proceeding distinct from, although procedurally consolidated with, a Chapter 11 proceeding in which Augie/Restivo Baking Company, Ltd. was named as the debtor and debtor-in-possession. On that date the two proceedings were substantively consolidated. Union is appealing such consolidation and its motion appears intended to compel action solely by Augie's.

eral two mortgages on Augie/Restivo property on which there is now owing approximately $2.7 million. It also lent Augie's an additional $300,000, taking back a security interest in Augie's machinery, equipment, goods, chattels, inventory, accounts receivable and other personal property, on which there is now owing approximately $365,000.

MHTC, which had been financing Restivo Brothers Bakers, Inc., continued to lend money to Augie/Restivo after the two companies integrated their operations and around April 1985, advanced Augie/Restivo $750,000. As part of the collateral package securing these advances, Augie's gave MHTC a guaranty and granted it a third mortgage in the amount of $750,000 on the real property to which Augie's held title.

About 15 months after the integration of the two companies, Augie/Restivo was involuntarily forced into bankruptcy. Augie's subsequently filed a voluntary petition and the two proceedings were procedurally consolidated. Their principals, after trying valiantly for over two years to keep the business afloat, have acknowledged defeat and have entered into an agreement to sell out to a new operator, Leon's Bakery, for $7 million. The sale is dependent on Bankruptcy Court authorization to sell free and clear of all liens. This, in turn, requires submission and approval of a plan or plans of reorganization. Despite outstanding tax claims of over a million dollars and a super priority debt to MHTC of $2.7 million from the use of cash collateral during the two preceding years, in which MHTC had a security interest, the debtors have been able to devise a plan which will give unsecured creditors ten percent of their claims. This is possible largely because MHTC has offered to accept half of what it is owed. Under the proposed plan, which assumes consolidation of the two proceedings, secured creditors will receive the full value of their security. This means that Union will receive the full amount of the debt collateralized by the mortgage or $3 million, but only a fraction of the other $365,000 owed it.

Union's challenge to the MHTC mortgage is based on the theory that this mortgage which was given on April 19, 1985, within one year of the date on which Augie's filed for relief under Chapter 11, April 16, 1986, constitutes a fraudulent conveyance. In support of its motion, Union has filed solely an application signed by its attorneys. No affidavits or documents, except a recent letter demanding the same action as the motion, accompany and support the motion. The application alleges upon information and belief that at the time of the transfer, MHTC knew that the mortgage would render Augie's insolvent and that it was given with the intent to hinder, delay and defraud Augie's creditors. The application further alleges that Augie's did not receive fair consideration for the mortgage. Union asserts "that a conveyance by a corporation for the benefit of an affiliate cannot be regarded as given for fair consideration as to the creditors of the conveying corporation." (Application by Union, pp. 4–5). Union claims that invalidating the mortgage will make available "an asset having an equity value of approximately $1,000,000" "for liquidation of creditors debts." Thus, if MHTC's security is limited to its lien on the accounts receivable of Augie/Restivo, "unsecured creditors would be paid a greater percentage than what is presently contemplated." (*Id.*, p. 6).

The attorneys for the debtors oppose the application on multiple grounds. They point out that insofar as Union claims that the mortgage is voidable as based on intentional fraud, it has produced nothing to buttress its claim and the debtors are prepared to testify that such allegation is simply false; insofar as Union presupposes constructive fraud making the mortgage vulnerable, not only were the debtors solvent at the time the mortgage was given, but fair consideration was received for it. The debtors reserve their strongest challenge, however, for Union's claim that invalidation of the mortgage would benefit the creditors. They point out that the alienation of MHTC by the commencement of an avoidance action will destroy the debtor's ability to confirm their recently filed Plan of Reorganization which is dependent upon the agreement of MHTC to

accept $1,5 million in full satisfaction of its super priority administrative claim of approximately $2.7 million. If the plan cannot be confirmed, the proposed sale to Leon's will not take place. The result will be a liquidation which will yield nothing for unsecured creditors, including Union.

So specious do the debtors consider Union's claim that creditors would benefit from invalidation of MHTC's mortgage that they have requested sanctions based on the circulation to all creditors of Union's motion papers. The debtors assert that Union has acted in contravention of section 1125 of the Bankruptcy Code which prohibits solicitation of an acceptance or rejection of a plan absent the approval of a disclosure statement as containing adequate information. Their position is that creditors (who are generally aware that Leon's currently operates the debtor's bakery and that a plan is imminent) are being falsely led to believe that a one million dollar windfall is available which will be lost under the debtors' proposed reorganization plan. (Objection on Behalf of Debtors and Debtors-in-Possession to Application of Union Savings Bank to Compel Institution of an Action to Set Aside Alleged Fraudulent Transfer, p. 9).

The Creditors Committee of Augie/Restivo takes a parallel position. They, too, press for sanctions describing the motion as filed in bad faith and terming its contention "frivolous." (Objection of Creditors' Committee of Augie/Restivo Baking Company, Ltd. to Motion of Union Savings Bank to Compel Debtor to Institute Action to Set Aside Alleged Fraudulent Transfers to Manufacturers Hanover Trust Company, pp. 2, 5). They assert, exactly as do the debtors, that Union is seeking "to ring the death knell of the Debtors; [and] in any liquidation unsecured creditors would not receive any funds." (Objection of Creditors' Committee, p. 4).

For its part, MHTC first notes that the exclusive power vested in trustees and debtors-in-possession to commence avoidance action under the Bankruptcy Code is permissive rather than mandatory and the exercise of such power can only be re-viewed for abuse of discretion. (Response of Manufacturers Hanover Trust Company to Motion of Union Savings Bank, p. 4). It thus urges that in order to prevail Union must make a *prima facie* demonstration that a colorable fraudulent conveyance claim exists against MHTC which, if successful, would benefit the estate and that Augie's refusal to institute such action was unjustified or constitutes an abuse of discretion. It cites as authority *In re Toledo Equipment Co.*, 35 B.R. 315, 320 (Bankr.N. D.Ohio 1983). MHTC asserts, and the Court agrees, "that the Debtor's two-year reorganization struggle will abort [if Union's motion is granted] and all unsecured creditors will be stripped of any chance of recovery if Union is allowed to get its way". (Response of MHTC, p. 8). The Court also agrees that Augie's refusal to commence the requested litigation has been entirely justified and that it would not be to the best interest of creditors for it to do so, even if success appeared likely, which it clearly does not.

## DISCUSSION

While Union nowhere so states, its motion is purposeless unless the Court's order of consolidation is reversed on appeal. Indeed, the motion's objective may be to buttress Union's appeal from that order. The motion is wholly frivolous if the consolidation order stands because regardless of whether MHTC has a third mortgage or not, its $2.7 million administrative super-priority claim covers whatever assets secured creditors cannot claim. That is why when Union advised all creditors (almost all of whom are creditors of Augie/Restivo) that they would benefit from invalidating MHTC's mortgage without explaining that benefits would accrue only if consolidation was overturned and only to the few creditors of Augie's at the expense of all the creditors of Augie/Restivo during the past three years, Union was being more than a little disingenuous. What Union proposes, far from benefitting all creditors, would deprive them of the small payout they are now scheduled to receive since mere initiation of the action, whatever its outcome, would ensure MHTC's refusal to forego

any portion of its administrative debt and would scuttle the projected plan of reorganization and any other requiring MHTC's cooperation.

MHTC must consent to take approximately half of what it is owed for unsecured creditors to receive any distribution. Consent clearly will not be forthcoming if proceedings are begun to invalidate the collateral securing $750,000. Thus, undoing the consolidation and suing MHTC will be fatal to most of the creditors and preclude their receipt of any money whatsoever. To suggest otherwise, is patently misleading.

If this Court's Order of Consolidation is reversed, Union's motion takes on greater plausibility in that invalidation of MHTC's mortgage might yield some benefit to Union and whatever pre–1985 creditors of Augie's still exist, if a number of other factors —against all odds—all break in Union's favor. Augie's real property would have to sell for its appraised value of approximately $4 million for even Union to realize any benefit. There is no assurance of this happening in a forced sale in the currently soft real estate market. Leon's offer of $7 million is for a functioning enterprise, not for an isolated piece of real estate. Furthermore, creditors entitled to make a claim against Augie's unpledged assets would have to be largely limited to Augie's pre-January 1, 1985 creditors, excluding post-petition trade creditors, the taxing authorities and MHTC's priority administrative claim. It can be assumed that none of these would go quietly into the night, but would, on theories allied to piercing the corporate veil, seek to make Augie's answer for the debts of Augie/Restivo based on the affiliation between the two companies and their way of doing business. Indeed, the IRS has already indicated that it intends to hold Augie's for the taxes incurred by Augie/Restivo. Thus, even any gain for Union from invalidating MHTC's mortgage appears unlikely, while the detriment to other creditors from sabotaging the present plan of reorganization is certain.

Most critically, invalidation of MHTC's mortgage requires grounds for doing so and Union, although it has been intimating for over two years that it questions that mortgage, has provided none. Its motion is based on vague, conclusory allegations made on information and belief, allegations which are belied by all the known facts.

■ A transfer may be invalidated for actual fraud or constructive fraud.[2] Section 548 permits a trustee to avoid a transfer made within one year of the date the petition was filed if (1) the debtor made such transfer with actual intent to defraud or (2) the debtor received less than a reasonably equivalent value in exchange and one of three other conditions was present.

■ Despite the fact that Union had ample opportunity to develop the facts and has examined the principals at its convenience, all that its application contains on

---

2. Two Bankruptcy Code sections enable a trustee, including the debtor-in-possession, to avoid a transfer as fraudulent. *See* 11 U.S.C. §§ 544 and 548.

Section 544 is the "strong-arm clause" which gives the trustee the rights of a creditor as of the date of petition and permits the trustee accordingly to invoke local law respecting fraudulent conveyances.

Section 548 provides as follows:
(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(ii) was engaged in business or a transaction, or was bout to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital, or
(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

actual fraud is the conclusory allegation, in the language of the statute, that the transfer was made with actual intent to defraud. Not only is the allegation flatly denied by the debtors, but in view of the timing of the transfer, the allegation is most implausible. In April 1985 when the mortgage to MHTC was given, Augie's was expanding, not contracting; it had just acquired Restivo Brothers; it was enlarging its facilities; all of which reflects an optimistic view of the future, not one consistent with an intent to defraud creditors.

▆ Equally groundless is Union's efforts to show constructive fraud. Union is unable to deny that MHTC made advances equal to the mortgage it received. It is therefore reduced to claiming that because the advances went to Augie/Restivo and the mortgage was given by Augie's, that Augie's did not receive reasonably equivalent value. The theory that consideration received by a parent will not support a transfer by a subsidiary does not represent the law. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2d Cir.1981); *see In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir.1983) (where subsidiary received benefits, parent received fair consideration for its guaranty); *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir.1979) (benefit to a debtor need not be direct but may come indirectly through benefit to a related third person). For purposes of the fraudulent conveyance provisions of the bankruptcy laws, indirect benefits to a corporate parent can sustain a guaranty or pledge of assets of an affiliate against attack. Wals, "Promises to Keep Intercorporate Guarantees and Fraudulent Transfers in Bankruptcy." 19 U.C.C.L.J. 219 (1987), n. 4.

The position taken by Union here is identical with that taken by the trustees in *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2d Cir.1981) and rejected by Judge Kearse, writing for a unanimous court. Judge Kearse's opinion reads in part: "Initially, we note that the trustees take too narrow a view of the fair consideration requirement of Section 67(d). [The predecessor of 11 U.S.C. § 548.] As was explained above, the fact that a third party initially receives the consideration given for the debtor's property or obligation does not automatically mean that fair consideration was lacking." 661 F.2d at 992–93. The correct principle, Judge Kearse said was:

If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved and Section 67(d) has been satisfied—provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.

661 F.2d at 991–992.

In this case, since in April 1985 the two corporations were operating as a single economic unit, it is virtually impossible for money to have been advanced to one without benefit to the other. Indeed, from what the Court knows of the facts, the two companies were so integrated that under the analysis in *Rubin, a fortiori,* Augie's received fair consideration.

We are not here, of course, determining the merits of an action to set aside MHTC's mortgage as a fraudulent conveyance. The Court is simply resolving whether the debtors should be forced at the behest of a single creditor to bring such proceeding. The Court must necessarily consider the likelihood of ultimate success were that proceeding to be brought. From everything that is known, there is every reason to believe that such litigation, which necessarily would be arduous, expensive and time consuming, would also be unsuccessful.

Even if Union had shown some merit to its claim that the mortgage to MHTC was a fraudulent transfer as against Augie's creditors, the Court would not in the present posture of the proceedings and in view of the disastrous impact on a reorganization which is on the verge of success require an action to be brought. Just as persons outside the bankruptcy court may consider in determining whether or not to bring a lawsuit, factors other than the likelihood of success on the merits, so may

persons in bankruptcy exercise discretion in light of such other consideration. *See In re E.G. Curry & Sorensen,* 57 B.R. 824, 828 (BAP 9th Cir.1986). (The debtor-in-possession can determine if the initiation of such an action would fall with the reorganization effort or to the contrary might be detrimental to it); *In re Toledo Equipment,* 35 B.R. 315, 319 (Bankr.N.D.Ohio 1983) (where the creditor to whom the alleged preferential transfer was made is a creditor on whom the debtor-in-possession is relying during the course of reorganization, it may not be in the debtor's best interest to bring a preference action against that creditor).

As noted earlier, bringing the action will kill the pending plan of reorganization which will, in turn, compel the liquidation of the debtors and leave the unsecured creditors with nothing.

While denying Union's motion to compel the debtor to sue to invalidate MHTC's mortgage, the Court is unwilling to impose sanctions on Union for making the motion or for circulating to the creditors of Augie/Restivo a document which misleadingly claims that they would benefit from such a lawsuit. Notice of the motion to all creditors was appropriate under the Bankruptcy Rules. While the ambiguities in the motion papers suggest that it was not unintentional that it become a vehicle for indirectly proselytizing against the debtors' plan of reorganization, the Court prefers to give Union and its attorneys the benefit of the doubt.

Accordingly, the motion is denied, as is the request for sanctions.

Settle Order.