David P. LEIBOWITZ, Trustee, Appellee,

v.

**PARKWAY BANK AND TRUST CO., Appellant.**

No. 97 C 923.

United States District Court,
N.D. Illinois,
Eastern Division.

May 22, 1997.

David Perry Leibowitz, Freeborn & Peters, Chicago, IL, pro se.

Leon Charles Wexler, Leon C. Wexler P.C., Chicago, IL, Robert L. Sklodowski, Sklodowski Franklin, Puchalski & Reimer, Chicago, IL, for Parkway Bank & Trust Co.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Now before the Court is Appellant Parkway Bank and Trust Co.'s ("Parkway") appeal pursuant to 28 U.S.C. § 158 from an order of the Bankruptcy Court permitting Trustee David P. Leibowitz ("Trustee") to avoid Debtor Image Worldwide Ltd.'s ("Image Worldwide" or "Debtor") transfers of accounts receivable to Parkway, and to recover amounts collected by Parkway on those accounts receivable, because Debtor did not receive "reasonably equivalent value" for the transfers as required by the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740

ILCS 160/1 *et seq.* Specifically, Parkway now asserts that, in fact, Debtor received "reasonably equivalent value" for its transfer because (1) Debtor, through its President Richard Steinberg ("Steinberg"), improperly obtained the accounts receivable of Image Marketing, Ltd. ("Image Marketing")—the party originally indebted to Parkway in the amount of $300,000 and the party on whose accounts receivable Parkway had a perfected security interest; (2) Debtor, by guaranteeing a $200,000 loan from Parkway to Steinberg, was able to pay its trade debt; and (3) Debtor was permitted by Parkway to continue in business in return for the transfers of accounts receivable. For the reasons set forth below, the Court affirms the ruling of the Bankruptcy Court.

## BACKGROUND

The bulk of the relevant facts, as detailed by the Bankruptcy Court, are largely undisputed by the parties. Steinberg was the sole shareholder of Image Marketing, an Illinois corporation engaged in the business of commercial printing and wholesale sales of music and sports related merchandise. Image Marketing was incorporated in or about June 1991.

Parkway extended credit to Image Marketing, initially in the principal amount of $150,000. Image Marketing was given a line of credit with Parkway such that Image Marketing was permitted to borrow up to 70% against eligible accounts receivable.[1] By June 1993, Parkway's "loan" to Image Marketing had increased to $300,000; this loan was secured by a first lien on substantially all of Image Marketing's assets.

In December 1993, Steinberg, as incorporator, organized Image Worldwide.

In early 1994, Image Marketing collected all of its outstanding accounts receivable and liquidated its inventory. The proceeds of the accounts receivable were used to pay as much of Image Marketing's trade debt as possible.

---

1. Under the terms of the Parkway loan, Image Marketing was required to reduce its indebtedness to Parkway as its eligible accounts receivable declined so that the outstanding loan amount never would exceed 70% of Image Marketing's eligible accounts receivable.

Significantly, as Image Marketing's accounts receivable were collected in early 1994, the loan amount technically available to Image Marketing on its line of credit from Parkway declined because, as previously indicated, under the terms of the loan agreement, Image Marketing's debt could not exceed 70% of its eligible accounts receivable. Indeed, once Image Marketing's accounts receivable were collected in full, there existed no outstanding accounts receivable to support Image Marketing's loan from Parkway Bank. Yet, despite the reduction of Image Marketing's accounts receivable to zero and notwithstanding Parkway's knowledge of Image Marketing's actions, Parkway did not require Image Marketing to pay down its loan. Instead, Parkway authorized Image Marketing to use the accounts receivable proceeds to pay down its trade debt.

Parkway became aware of the existence of Image Worldwide in February 1994. Although Image Worldwide was not indebted to Parkway at the time, Parkway required Image Worldwide to execute on May 27, 1994, a commercial security agreement, a commercial guaranty and related documentation whereby Image Worldwide guaranteed Image Marketing's outstanding debt to Parkway. Image Worldwide received no money from Parkway for executing the security agreement and/or the related loan documents. The only consideration Parkway claimed to have given for Image Worldwide's guaranty was that Parkway "allowed" Image Worldwide "to continue in business." From May 27, 1994 to the date of Image Worldwide's bankruptcy, Debtor paid $12,000 in principal and $34,999.31 in interest to Parkway on Image Marketing's loan.

On June 9, 1994, Parkway Bank loaned $200,000 to Steinberg; Steinberg sought this loan to satisfy Image Marketing's trade debt to FCL Graphics. Image Worldwide granted to Parkway a security interest on Image Worldwide's accounts receivable and other assets to secure the loan to Steinberg. Neither Steinberg nor Image Worldwide received any money from this loan.

Image Worldwide, either directly or through applying commission payments which were due from FCL Graphics to Image Worldwide, paid $72,076.49 in principal and $26,863.45 in interest to Parkway on the $200,000 loan.

In August 1995, Parkway began collecting Image Worldwide's outstanding accounts receivable and applying the proceeds to reduce Image Marketing's indebtedness.

On October 13, 1995, after an involuntary bankruptcy petition against Image Worldwide resulted in the issuance of an order for relief, Parkway, over Trustee's objection, obtained relief from the automatic stay permitting it to collect Image Worldwide's accounts receivable. Parkway ultimately collected all of Debtor's accounts receivable and retained (1) $292,568.30 of the proceeds as payment on the Image Marketing loan ($282,000 in principal and $10,568.30 in interest), and (2) the remaining $11,410.50 in proceeds as payment on the Steinberg note.

All tolled, Parkway Bank collected from Image Worldwide (1) $300,000 in principal and $45,567.71 in interest—a total of $345,-567.61—on Image Marketing's loan, and (2) $72,076.49 in principal and $26,863.45 in interest—a total of $98,939.94—on Steinberg's loan. At no time during which Debtor paid any portion of this $444,507.55 to Parkway were Debtor's assets greater than its liabilities.

On July 12, 1996, Trustee filed an Adversary Complaint seeking to avoid Debtor's transfers to Parkway of security interests in Debtor's accounts receivable and other assets. On January 21, 1997, following a trial on Trustee's claim/s, Bankruptcy Judge Erwin I. Katz issued Findings of Fact and Conclusions of Law in which he found that, "Without receiving any consideration whatsoever, much less reasonably equivalent value in exchange, the Debtor, Image Worldwide, made transfers to Parkway Bank in connection with security interests the Bank had taken on substantial all of Image Worldwide's assets to secure the Bank's loans to Image Marketing and Richard Steinberg. The transfers were made solely for the benefit of Image Marketing and Richard Steinberg." The Bankruptcy Judge thus concluded that, "Under the UFTA, Trustee may avoid Image Worldwide's grant of security

interests to Parkway Bank to secure the loans of Image Marketing and Richard Steinberg because Image Worldwide received no consideration for the transfers to Parkway Bank, and Image Worldwide was either a) insolvent as of May 27, 1994—the date of the transfer—and thereafter, or in any event became insolvent as a result of the transfer, or b) as a result of the transfer, engaged in business for which it retained unreasonably small capital." Judge Katz ordered Parkway to pay to the bankruptcy estate "$444,507.55 plus pre-judgment interest calculated at a rate of 9% per annum from October 13, 1995 to the day of judgment."

## DISCUSSION

In reviewing a bankruptcy court decision, this Court acts as an appeals court and applies the same standards of review as govern appellate review in other cases. Accordingly, the Court reviews the bankruptcy court's legal determinations de novo and reviews the bankruptcy court's factual findings using a "clearly erroneous" standard. The bankruptcy court's conclusions on mixed questions of law and fact and/or on questions pertaining to the application of facts to the law are reviewed *de novo*. *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 88 (7th Cir.1986); *In re Bonnett*, 73 B.R. 715, 716 (C.D.Ill.1987).

Here, the sole issue before the Court is whether the Bankruptcy Judge erred in finding that Debtor's granting of a security interest in, and the resulting transfers of, its accounts receivable to Parkway was fraudulent because Debtor did not receive "reasonably equivalent value" for the transfers as required by UFTA. "Whether the transfer is for 'reasonably equivalent value' [under the statute] in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of facts." 4 Collier on Bankruptcy 548.09, at 548–112 (15th ed.1993) (as quoted in *In re Wes Dor, Inc.*, 996 F.2d 237, 242 (10th Cir.1993)); *see also In re Bundles*, 856 F.2d 815, 825 (7th Cir.1988); *In re Grabill Corp.*, 121 B.R. 983, 994 (Bankr.N.D.Ill.1990); *In re Minnesota Utility Contracting, Inc.*, 110 B.R. 414, 419 (D.Minn.1990). Accordingly, the Court will

set aside Judge Katz's findings only if those findings are "clearly erroneous"—that is, only if the Court is firmly convinced that the Bankruptcy Court's findings are wrong. *See In re Ratner*, 132 B.R. 728, 731 (N.D.Ill. 1991); *North Comm. Bank v. Boumenot*, 106 B.R. 149, 152 (N.D.Ill.1989). The Court is not so convinced.

The determination as to whether Debtor received "reasonably equivalent value" for its transfers to Parkway turns on an analysis of the type and/or the amount of benefit obtained by Debtor in return for the transfers. If Debtor's unsecured creditors were (or are) damaged in their ability to collect from Debtor by virtue of Debtor's transfers to Parkway, then the transfers were (and are) fraudulent and may be avoided by the Trustee. *See Harman v. First Amer. Bank of Maryland*, 956 F.2d 479, 484 (4th Cir.1992); *In re Grabill*, 121 B.R. at 994; *Matter of Ohio Corrugating*, 70 B.R. 920, 927 (Bankr.N.D.Ohio 1987); *Southmark Corp. v. Riddle*, 138 B.R. 820, 829 (Bankr.N.D.Tex. 1992). As noted by the Seventh Circuit:

> In determining whether property was sold for reasonably equivalent value, the bankruptcy court must, of course, be mindful constantly of the purpose of section 548's avoiding powers—to preserve the assets of the estate. This consideration requires that, in determining reasonably equivalent value, the court must focus on what the debtor received in return for what he surrendered.

*In re Bundles*, 856 F.2d at 824 (citations omitted).

Based on the documentary and testimonial evidence presented at trial, Judge Katz reasonably found that (1) Image Worldwide was not directly indebted to Parkway at the time that it granted Parkway a security interest in its accounts receivable; (2) Debtor received no benefit, either direct or indirect, from its transfers to Parkway; and (3) Debtor's granting of a security interest in, and eventual transfers of, its accounts receivable to Parkway were made solely for the benefit of Image Marketing, Steinberg and/or FCL Graphics. Given these findings of fact, Judge Katz correctly concluded that Debtor's

transfers to Parkway were "fraudulent" and thus recoverable by Trustee, as (1) transfers made *exclusively* for the benefit of third parties do not furnish "reasonably equivalent value" to a debtor, *In re Globe Tanker Services, Inc.*, 151 B.R. 23, 24–25 (Bankr. D.Conn.1993); *In re Minnesota Utility Contracting, Inc.*, 110 B.R. 414, 419 (D.Minn. 1990); *In re Augie/Restivo Baking Co., Ltd.*, 87 B.R. 242, 247 (Bankr.E.D.N.Y.1988), and (2) a conveyance by one company for the benefit of an affiliated company is insufficiently valuable to the conveying company's unsecured creditors to constitute "reasonably equivalent value," *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981); *In re Osage Crude Oil Purchasing, Inc.*, 103 B.R. 256, 261–62 (Bankr. N.D.Okla.1989).

■ While Parkway contends that, in fact, Debtor received substantial consideration for its pledge of accounts receivable, in that Debtor was permitted to "continue in business," such consideration does not constitute "reasonably equivalent value" for purposes of fraudulent transfer law. Indeed, in *In re Jolly's, Inc.*, 188 B.R. 832, 842–43 (Bankr.D.Minn.1995), a case very similar to this one, a Chapter 7 trustee was allowed to avoid a corporate debtor's grant of a security interest in its assets to a creditor of the debtor's owner, notwithstanding the debtor's argument that by allowing the debtor to continue in business, the creditor had furnished reasonably equivalent value. The *Jolly's* court explained that although the debtor had an interest in assuring its continued operation, it had an even greater interest in assuring the existence of assets sufficient to cover its *own* corporate debts:

> The [creditors] have not carried this burden [of quantifying the indirect benefit received by the debtor]. They have identified only one circumstance as an indirect benefit that the Debtor would have derived from the pledge of its assets: the op-

portunity to continue to carry on business, relieved of the immediate threat of foreclosure by [one of the creditors]. This evidence, however, cannot support a reasonable inference as to the ultimate fact here—that the Debtor received something of concrete value to it, that it otherwise would not have had.

*Id.* at 843.

■ This Court thus concludes that the Bankruptcy Court's factual findings were not (and are not) "clearly erroneous" and that, in light of those factual findings, the Bankruptcy Court's legal conclusions were (and are) correct.[2]

## CONCLUSION

For the foregoing reasons, this Court affirms the Bankruptcy Court's decision of January 21, 1997.

---

2. As correctly noted by the Trustee, because Parkway's present arguments as to (1) the existence of a *de facto* merger between Debtor and Image Marketing and (2) the propriety of Debtor's transfers to Parkway under the Illinois law of secured interests were not fully and/or clearly presented to the Bankruptcy Court in the first instance, those arguments have been waived, and Parkway is barred from asserting those arguments in this appeal: "Arguments not presented to the trial court are waived and cannot be raised for the first time on appeal." *Matter of Kroner*, 953 F.2d 317, 319 (7th Cir.1992); *see also U.S. v. Williams*, 156 B.R. 77, 81 (S.D.Ala.1993).