MEIERHENRY, Justice
(dissenting).
[¶ 50.] I would affirm the trial court as neither clearly erroneous in its findings of fact nor erroneous in its application of the law. First in reviewing questions of fact, we use the clearly erroneous standard. Prairie Lakes Health Care Sys. Inc. v. Wookey, 1998 SD 99, ¶ 5, 583 N.W.2d 405, 410. Under this deferential standard of review, we will not overturn the trial court’s factual findings “unless we are definitely and firmly convinced a mistake has been made.” Id. (additional citations omit *831 ted). The trial court found no fraudulent transfer under the UFTA based on the unique circumstances surrounding BHG and Coleman’s relationship and course of dealing over the five years BHG operated in Washington. The majority opinion gives no deference to the trial court’s factual determinations and appears to retry every element of actual and constructive fraud de novo.
[¶ 51.] The majority opinion determines that the trial court erred when it concluded that Glimcher failed to establish there had been actual intent to hinder, delay or defraud creditors. Specifically, the majority opinion alleges that the trial court erred when it considered the objective factors in RCWA 19.40.041(b) because it focused on the actions of Coleman instead of BHG and because it overlooked certain factors. However, this conclusion fails to give deference to the trial court’s ability to judge the credibility of the witnesses and weigh the evidence. Prairie Lakes Health Care Sys. Inc., 1998 SD 99, ¶ 11, 583 N.W.2d at 412 (stating that “[t]he circuit court is in the best position to assess the witnesses’ credibility and the weight to be given their testimony, and we give great deference to the circuit court’s opportunity to observe the witnesses and testimony first hand.”). In addition, the majority opinion fails to acknowledge the specific facts of this ease, which the trial court concluded took BHG out of the realm of the UFTA.

1. Actual Fraud

[¶ 52.] RCWA 19.40.041(b) provides a non-exclusive list of factors to consider when determining whether the debtor had the intent to hinder, delay or defraud creditors. The statute provides: “In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors.... ” RCWA 19.40.041(b). The language of the statute allows courts flexibility when analyzing actual intent. Pursuant to the language of RCWA 19.40.041(b), courts “should evaluate all the relevant circumstances involving a challenged transfer or obligation. Thus the court may appropriately take into account all indicia negativing as well as those suggesting fraud.” UFTA § 4, cmt(6).
[¶ 53.] In this case, the trial court’s decision specifically rested on the unique circumstances surrounding the relationship between BHG and Coleman. BHG had been operating at a loss for the majority of the past five years. To its detriment, Coleman continued to supply it with inventory to keep the mall store in business. During this time, BHG paid its creditors, including Glimcher, despite the fact that it continued to operate at a loss. Based on these facts, the trial court noted:
The case at hand presents a very unique set of circumstances, none of which parallel any of the cases reviewed by this Court. Perhaps the extraordinary point in this case is that every effort was made by Coleman on behalf of BHG to pay all obligations at the time of the closing of BHG. They went to great efforts to wind down a business in a manner which would not deny the creditors of BHG receipt of monies then owed to them.
[¶ 54.] The trial court also acknowledged that at first glance, the facts portrayed Coleman as an insider who was “trying to take advantage of its relationship with BHG to remove all assets of value for its own benefit, leaving BHG’s creditors to fight over the scraps.” However, Sobczak’s testimony at trial indicated that in the course of negotiating a lease with the mall, Supermall, the lessor at the time, understood and agreed that BHG would be created as a Washington corporation for the express purpose of isolating *832 liability against Coleman in the event the mall store was not profitable. Therefore, Coleman was not some secret entity waiting in the wings to prevent BHG from being liable to any of its creditors. Coleman was the party that the mall dealt with during the initial contract negotiations and was the party that kept BHG in business despite the fact that it operated at a loss for four of the five years. The trial court found that these facts negated a finding that BHG had actual intent to hinder, delay or defraud Glimcher. The trial court stated:
Coleman at no time took advantage of any of the other creditors by the actions which it took in supporting the ongoing operation of BHG.... It struggled to maintain a business despite its losses and to honor its contracts and agreements with all obligors of BHG.... Coleman proceeded in extreme good faith in taking the actions which it did.
[¶ 55.] Based on the circumstances surrounding the formation of BHG, the course of dealing over the past five years between BHG and Coleman and the fact that BHG had satisfied all of its outstanding debts at the time it closed its mall store, except for those still owed to Coleman, the trial court concluded that Coleman or its agents had no intent to hinder, delay or defraud any of its creditors. This was a question of fact involving an inquiry into the intention of the parties. See Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 261-62 (1stCir.1997) (stating that “it is a question of fact whether a transfer was made with actual intent to defraud.”). The trial court, as the finder of fact, was in the best position to judge the credibility of the parties. Prairie Lakes Health Sys. Inc., 1998 SD 99, ¶ 11, 583 N.W.2d at 412. Based on our deferential standard of review, this finding was not clearly erroneous.

2. Reasonably Equivalent Value

[¶ 56.] The trial court also concluded that BHG received reasonably equivalent value for the transfer of inventory to Coleman. The majority opinion claims that the trial court was distracted by the history between BHG and Coleman. In addition, the majority opinion finds that the trial court erred as a matter of law by focusing on the transfer of BHG’s assets from Coleman’s point of view.
[¶ 57.] “Whether the transfer is for ‘reasonably equivalent value’ in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of facts.” Prairie Lakes Health Care Sys., Inc., 1998 SD 99, ¶ 11, 583 N.W.2d at 412 (citing Leibowitz v. Parkway Bank & Trust Co., 210 B.R. 298 (N.D.Ill.1997)). When we review the transfer, we must ultimately examine “what [the] debtors received in exchange for what they surrendered.” Id. (additional citations omitted). Accordingly, the facts indicate that BHG did receive reasonably equivalent value for the transfer of assets to Coleman.
[¶ 58.] At the time BHG closed its doors, it had $290,000 worth of inventory and owed Coleman over $700,000 for supplying it with inventory. BHG also had a lease with Glimcher until July of 2002, which was current up until the time it closed its doors at the mall. The trial court concluded that BHG received value in not only the value of the inventory that was credited to the benefit of the debt against BHG, but also the value of maintenance of BHG for the previous years at which BHG operated at a loss to the detri *833 ment of Coleman. Consequently, based on these facts, the trial court’s finding that BHG received reasonably equivalent value was not clearly erroneous.
[¶ 59.] Because I believe that the trial court should be affirmed as to the UFTA, I would not address the promissory or equitable estoppel issues.
[¶ 60.] GILBERTSON, Chief Justice joins this dissent.