**Ronald JOHNSON, Plaintiff,**

v.

**FAIRCO CORPORATION, Defendant.**

**No. 85 C 6627.**

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1986.

Vincent J. Pascucci, Chicago, Ill., for plaintiff.

Ralph E. Brown, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case is before us on an appeal from the bankruptcy court by Ronald Johnson, a minority shareholder of the debtor-in-possession, Fairco Corporation ("Fairco"). Johnson seeks the reversal of the bankruptcy court's orders denying his motion for relief from the automatic stay provisions of the bankruptcy code and allowing Fairco's motion to reject a stock redemption agreement as an executory contract. For the reasons stated below, we affirm.

Fairco filed a Chapter 11 petition for reorganization with the bankruptcy court on October 9, 1984. On May 7, 1985, Fairco filed a motion to reject a stock redemption agreement ("the agreement") between Johnson, Fairco and Peter McWilliams, previously Fairco's majority shareholder, as an executory contract under 11 U.S.C. § 365(a) (1982 & Supp. II. 1984).[1] The agreement provided, among other things, that upon the death of any shareholder Fairco would purchase all of the decedent's shares from his estate. McWilliams died on February 17, 1982, after which his widow Ann, acting

---

1. Section 365(a) of Title 11 provides:
 (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

as his executor, entered into a voting trust agreement whereby Johnson controlled the voting of McWilliams' shares. The voting trust agreement expired by its own terms on May 6, 1984. What followed was a battle over the stock redemption agreement (and consequently, over control of Fairco), when Johnson, acting in Fairco's behalf, sought specific performance of the agreement and Ann sought a state court order to compel Johnson to revoke and terminate the agreement on Fairco's behalf. A state trial court granted the specific performance of the agreement but was reversed by an Illinois appellate court on September 4, 1984. *Fairco Corp. v. McWilliams*, 126 Ill.App.3d 1152, 90 Ill.Dec. 879, 483 N.E.2d 26 (1st Dist.1984). The appellate court vacated the order requiring specific performance and remanded the case for further proceedings regarding Article 5 of the agreement which purportedly allowed the executor of a Fairco shareholder to terminate the agreement, but which was apparently omitted inadvertently from the agreement. Before the state court proceedings could proceed, however, the Chapter 11 petition was filed, and the automatic stay of proceedings took effect. 11 U.S.C. § 362(a) (1982 & Supp. II 1984).

On May 7, 1985, Fairco filed a motion in the bankruptcy court to reject the agreement as an executory contract under 11 U.S.C. § 365(a) (1982 & Supp. II 1984). On the same day, Johnson filed a motion for relief from the automatic stay provision so that he could pursue his claim for specific performance of the agreement in state court. The bankruptcy court granted the motion to reject the agreement and declined to lift the automatic stay.

On his appeal, Johnson argues that the agreement is not an executory contract under § 365(a), and that even if it is, rejection was not in the best interests of the debtor-in-possession. He also contends for the first time on appeal that Fairco's counsel has a conflict of interest since attorneys from the same law firm represent Ann, both individually and as executor of the McWilliams estate, and that this conflict requires not only removal of Fairco's counsel, but also a rehearing before the bankruptcy court.

■ Section 365(a) of the bankruptcy code provides that, with exceptions not relevant here, "the trustee [or debtor], subject to the court's approval, may assume or reject any executory contract...." 11 U.S.C. § 365(a) (1982 & Supp. II 1984). Though the term "executory contract" is not defined in the code, its generally accepted definition in this context is a " 'contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973), *cited in In re: Fashion Two Twenty, Inc.*, 16 B.R. 784, 786 (Bankr.N.D.Ohio 1982); *see also In re: California Steel Co.*, 24 B.R. 185, 187 (Bankr.N.D.Ill.1982). In this case, there are unperformed material obligations on the part of both Fairco and the McWilliams estate.[2] No money has been paid to the estate, and the estate has not tendered the shares to Fairco. Apparently, the creation of the voting trust agreement granting Johnson voting rights over the estate's shares forestalled comple-

---

**2.** Article 3 of the agreement provides:

UPON THE DEATH OF A SHAREHOLDER— Upon the death of any Shareholder, the Company shall purchase, and the estate of the decedent shall sell, all of the decedent's stock in the Company now owned or hereafter acquired. The purchase price of such stock shall be computed in accordance with the provisions of Article 2 of this Agreement. If the purchase price exceeds the proceeds of the life insurance, the balance of the purchase

price shall be paid in 120 consecutive monthly payments beginning 60 days after the date of the Shareholder's death. Such unpaid balance of the purchase price shall be evidenced by a series of negotiable promissory notes executed by the Company to the order of the estate of the deceased with interest at 5% per annum. If any payment is in default, all such payments, shall draw an additional rate of interest of 5% till paid.

tion of performance. Nonetheless, the failure of either party to perform at this point would still constitute a material breach, so the contract must be deemed "executory."[3]

■ Having established the executory nature of the agreement, we turn to the bankruptcy court's determination that the rejection was beneficial to the debtor. The generally accepted standard for a court reviewing the debtor's rejection of an executory contract is the business judgment rule, the same test applied to judicial review of corporate decision-making in other contexts. *See NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 523, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1046 (4th Cir.1985). This lax standard directs courts to approve the debtor's actions where the latter demonstrates that rejection will benefit the debtor's estate or reorganization efforts. Only where the debtor's actions are in bad faith or in gross abuse of its managerial discretion should the decision be disturbed. *Lubrizol,* 756 F.2d at 1047.

■ In applying this standard, the bankruptcy court held that it would not be in the best interests of the Chapter 11 estate or Fairco's creditors to proceed with the redemption since the funds which would be necessary to perform on the contract should be used to pay the creditors before the shareholder's claims may be recognized. The court also found that life insurance policies owned by Fairco which were to provide the funds for the stock redemption in the event of a shareholder's death were not available, thus vitiating the agreement. Requiring payment of the approximately $40,000 necessary for redemption

by the debtor-in-possession would clearly impede its ability to protect the interests of its various creditors. These factual findings of the bankruptcy court must be accorded great deference by this Court and can only be disturbed if they are clearly erroneous. Bankr. Rule 8013; *In re Martin,* 698 F.2d 883, 885 (7th Cir.1983). Accordingly, given these findings, we agree with the bankruptcy court's decision that the contract rejection was appropriate.

■ Finally, we turn to Johnson's allegations that the debtor's counsel should be removed from the case because he also represents the McWilliams estate and that this constitutes grounds for a rehearing. Johnson raised this issue for the first time on appeal.[4] Issues that are not raised by a party in the bankruptcy court are ordinarily waived and cannot be addressed by the district court on appeal, unless the issue itself is presented by the record. *See, e.g., In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1379 (9th Cir.1985). There is nothing based on the record alone that indicates the existence of a conflict of interest in this case. Furthermore, the Court has found no authority which indicates that the waiver rule should not apply to claims of attorney conflict of interest, and Johnson has supplied none. Hence, we hold that Johnson waived the issue by not raising it in the bankruptcy court.

The rejection of the stock redemption agreement by the debtor Fairco is allowed, and the automatic stay will not be lifted for Johnson. In reaching these conclusions, we affirm the decision of the bankruptcy court in full. It is so ordered.

---

**3.** The bankruptcy court did not address the issue of why the agreement did not terminate automatically pursuant to Article 10, which provided:

TERMINATION OF THE AGREEMENT—This agreement shall terminate on the occurrence of any of the following events:

\* \* \* \* \* \*

(c) Bankruptcy, receivership or dissolution of the Company.

While this would indicate that the agreement was terminated upon Fairco's Chapter 11 filing, we do not reach that question here.

**4.** Johnson apparently raised the same conflict question in an earlier related proceeding, *Fairco v. Johnson,* 84 A 1366, to which the law firm representing Fairco replied. Judge Charles B. McCormick of the bankruptcy court dismissed this motion on March 27, 1985, and it was not appealed in that proceeding, nor raised at any time in the proceedings in this case.