In re Gary Philip RATNER, Debtor.

BENNETT & KAHNWEILER ASSOCI-ATES, an Illinois Limited Partnership, and Trustees of the Chicago Truck Drivers Helpers and Warehouse Workers Union (Independent) Pension Fund, Appellants,

v.

Gary Philip RATNER, Appellee.

No. 90–C 4590.

Adv. Nos. 89 A 0164, 89 A 0239.

United States District Court,
N.D. Illinois, E.D.

Sept. 19, 1991.

Karen I. Engelhardt, Jacobs, Burns, Sugarman & Orlove, Harry Golter, Chicago, Ill., for appellants.

David N. Missner, Rudnick & Wolfe, Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The appellants, Bennett & Kahnweiler Associates ("Bennett & Kahnweiler") and the Trustees of the Chicago Truck Drivers Helpers and Warehouse Workers Union Pension Fund ("the Trustees"), bring this appeal of the United States Bankruptcy Court's April 11, 1990 judgment against them in this case, and the court's June 12, 1990, denial of the appellants' motions for a new trial, reconsideration, and sanctions. For the reasons explained below, the judgment of the bankruptcy court is affirmed in part, and remanded in part for further findings consistent with this ruling.

### Background

This discussion begins with a brief review of the procedural history of this case. Ratner's indebtedness to Bennett & Kahnweiler ("B & K") arose out of a lawsuit which established, by declaratory judgment entered on February 28, 1983, the debtor's liability under a brokerage contract. On November 25, 1986, plaintiff B & K filed suit against Gary Ratner and others, claiming commissions under the contract in the amount of $328,230. B & K obtained a judgment for $106,076 against Ratner on February 11, 1988.

On November 29, 1988, Ratner, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code ("the Code"). B & K brought an adversary proceeding objecting to discharge under § 727 of the Code on February 21, 1989, and the Trustees brought their action on March 8, 1989. The debtor filed motions to dismiss plaintiffs' complaints, which were granted. Plaintiffs subsequently filed several amended complaints to meet debtor's and the bankruptcy court's continuing objections to the complaints. Prior to trial, plaintiffs sought leave to file a consolidated amended complaint, but the court denied this request.

The bankruptcy court held a consolidated trial on plaintiffs' complaints on March 26, 1990. Judge Barliant found that plaintiffs failed to meet their burden of showing by a preponderance of the evidence that the appellee Gary Ratner's debts should be nondischargeable under 11 U.S.C. § 727(a)(2)(A) and (a)(3). *See Gary Phillip Ratner, Debtor,* Transcript of the Proceedings before Barliant, J., April 11, 1990. The court entered orders on both complaints denying the requested relief on April 11, 1990. Plaintiffs subsequently filed motions for a new trial, reconsideration and sanctions. Those motions were denied on June 12, 1990.

### Discussion

■ "On appeal [from the bankruptcy court] the district court or bankruptcy appellate panel may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous...." Federal Bankruptcy Rule 8013. Rulings and conclusions of law are reviewed de novo by the district court with no deference accorded to the bankruptcy court.[1]

---

1. Where there are pure questions of law, or mixed questions of law and fact, the District

■ Plaintiffs sought to have Ratner's debt declared nondischargable under 11 U.S.C. § 727(a)(2)(A) and (a)(3). Under this provision, the court will grant the debtor a discharge unless the appellees can prove by a preponderance of the evidence that the debtor,

> (2) ... with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed,
>
> (A) property of the debtor, within one year before the date of the filing of the petition....

Denial of discharge under Section 727(a)(2)(A) requires not only proof of a transfer of non-exempt to exempt property, but also proof of actual intent to hinder, delay or defraud a creditor. *Matter of Smiley*, 864 F.2d 562, 564 (7th Cir.1989). In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct". *Matter of Reed*, 700 F.2d 986 (5th Cir.1983).

■ The question of a debtor's intent under § 727 of the Code is a question of fact to be determined by the bankruptcy judge. *See Smiley*, 864 F.2d 562, 566 (7th Cir.1988) (Bankruptcy court's findings regarding debtor's intent to hinder, delay or defraud under Section 727(a)(2) of the Code is a factual determination). Accordingly, the Bankruptcy Court's findings on this issue should not be reversed, unless this court finds that they are clearly erroneous.

*Id.; North Community Bank v. Boumenot*, 106 B.R. 149 (N.D.Ill.1989).[2] We may conclude that a finding of fact is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511.

Plaintiffs contest the bankruptcy court's resolution of numerous issues which were presented at trial. A discussion of some of the issues presented on appeal follows.

*The Cleveland Residence*

■ At trial, Judge Barliant noted that one of the primary issues in this case concerned the debtor's transfer of his interest in the family residence to his wife in 1984. The plaintiffs argued that debtor assigned his one-half interest in the "Cleveland Residence" to his wife Dalia Ratner in February, 1984, as part of his continuing efforts to hinder, delay or defraud his creditors.[3]

As Judge Barliant noted, the circumstances surrounding the transfer are somewhat suspicious. Shortly after B & K obtained declaratory judgment against the debtor, which contained the possibility of a larger judgment in the event of certain contingencies, Ratner transferred his interests in the house to his wife for no consideration. Before the transfer, Ratner consulted with a lawyer who told him that a transfer was permissible if he remained solvent after the transfer. The debtor continued to live in the house after the transfer, and continued to pay some of the mort-

---

Court may conduct a *de novo* review. *See In re Mader*, 108 B.R. 643 (N.D.Ill.1989). Plaintiffs contend that because the bankruptcy court did not clearly state which findings were factual findings, and which findings were legal findings, this court should apply a *de novo* standard of review. This court disagrees. The *de novo* standard of review does not apply simply because the Bankruptcy Court's factual findings, and legal findings were mixed together; the standard only applies to mixed questions of law and fact.

2. In determining whether Judge Barliant's findings were clearly erroneous the court must bear in mind that "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard

shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. *See also, In re Weber*, 892 F.2d 534, 538 (7th Cir.1989). Further, when there are two permissible views of the facts, the bankruptcy judge's choice between them cannot be clearly erroneous. *In re Weber*, 892 F.2d at 538. Under the "clearly erroneous" standard, the reviewing court may not reverse a lower court "simply because [it] is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

3. Since the transfer took place years before Ratner filed his petition it could only serve as evidence of the debtor's continuing efforts to conceal his assets.

gage and tax payments. (Tr. April 12, 1990, p. 3).

Plaintiffs argued that the facts of this case closely resemble those *In re Kauffman*, 675 F.2d 127 (7th Cir.1981), where the bankruptcy court denied the discharge after the debtor transferred his interest in the family residence to his wife.[4]

After considering all of the evidence presented, Judge Barliant found that *Kauffman* was not controlling, and that Ratner did not make the transfer with intent to hinder, delay or defraud his creditors. First, Ratner testified that he transferred his interest in the Cleveland residence in order to save his marriage. (Tr. April 2, 1990, pp. 402–403). Judge Barliant found this testimony credible and convincing. (Tr. April 11, 1990, pp. 3–4). Judge Barliant found that although Ratner did live in the house and pay its mortgage and tax note, unlike the debtor in *Kauffman*, Ratner never held the property out as his own after the transfer. He did not use the property to acquire personal loans, or list the property as one of his assets. *Id.* This finding was not clearly erroneous.

Judge Barliant rejected plaintiffs' argument that Ratner's seeking advice from counsel, and preparing a balance sheet at the time of transfer, was evidence of his intent to protect his assets against potential creditors. This court also rejects the argument, which was raised again on appeal. Debtor testified that he spoke with his attorney because he wanted information on how to effectuate a legal transfer. (Tr. April 2, 1990, p. 404). Judge Barliant's acceptance of this testimony was reasonable. *See e.g., In re Nerone*, 1 B.R. 658, 659 (Bankr.S.D.N.Y.1979) (Since transfer was predicated on advice of counsel, it could not be found that debtor had requisite intent).

The court also noted that Ratner had substantial assets at the time of the transfer. The claimed motive for the transfer (avoidance of a judgment against him), was uncertain, since the parties did not dispute that plaintiff's recovery of the judgment depended upon events that, if they occurred, would not happen for at least four years after the transfer. (Tr. April 12, 1990, pp. 3–4).

Appellants argue that this decision was in error. They contend that the court "did not consider the fact that the debtor was insolvent immediately after he transferred his real estate to his spouse." Plaintiffs contend that debtor's insolvency stems from the debtor's omission of the mortgage which the house was subject to on his financial statement, and the debtor was co-obligor for, and the debtor's omission of B & K's money judgment against him. This argument is not persuasive.

■ Plaintiffs' argument that the debtor was insolvent at the time of the transfer is a new argument which should have been raised at trial. Plaintiffs do not attempt to explain why this argument was not raised before the trial court. As Ratner rightly argues, plaintiffs failure to present the argument at trial amounts to waiver. *See e.g., In re Ozark Restaurant Equipment Co., Inc.*, 850 F.2d 342, 346 (8th Cir.1988) (District courts acting as appellate court in bankruptcy proceedings can properly refuse to consider factual issues not raised in the bankruptcy court); *Dallas v. S.A.G. Inc.* 836 F.2d 1307 (11th Cir.1988); *and, Johnson v. Fairco Corp.*, 61 B.R. 317, 320 (N.D.Ill.1986) (Aspen, J.) (Issues not raised before the bankruptcy court ordinarily cannot be presented to the District Court on appeal).[5]

---

4. In *Kauffman*, the court found that, despite the transfer, Kauffman retained a beneficial interest in the property into the statutory period. He took out several personal loans using the house as collateral, listed the property as one of his personal assets, lived in the house, and continued to make mortgage, tax, and insurance escrow payments on the house. These attendant circumstances indicating that the bankrupt continued to use the property, were sufficient to constitute a concealment.

5. Plaintiffs reliance on *Vintero Corp. v. Corporation Venezolana de Fomento*, 675 F.2d 513, 515 (2nd Cir.1982), to support their argument that waiver does not apply, is misplaced. As noted in *Vintero*, a "party who has not raised an issue below is precluded from raising it on appeal." *Id.* at 515. Only when a party raises "new contentions that involve only questions of law" can an appellate court consider the new issues. *Id.* In the instant case, plaintiffs' new argument

The court finds that Judge Barliant's ruling with respect to the Cleveland residence was not clearly erroneous, and therefore affirms that ruling.

### The Debtor's Deposit of Funds into his Wife's Account

■ Ratner's individual bank account was closed involuntarily on February 18, 1988. Ratner testified that he was unable to open an individual account at another bank, so after that date he began to deposit his funds into his wife's account. (Tr. April 2, 1990, pp. 420–422). Ratner introduced into evidence exhibits which showed that funds from this account were used to pay for ordinary household expenses. (Debtor's exhibits 24, 25, 28 and 29). Ratner's voluntary petition for relief under Chapter 7 of the Code was filed on November 29, 1988.

Judge Barliant found that Ratner's deposits represented a transfer of Ratner's property, and that the transfers clearly occurred within a year before bankruptcy. The court concluded, however, that the discharge should be granted because, given the reasons for the transfer, he found no evidence of intent to hinder, delay, or defraud creditors. Judge Barliant noted that none of the funds in Dalia Ratner's account were used by the debtor to acquire assets, and that the funds were used to pay for ordinary household expenses. (Tr. April 12, 1990, pp. 4–6).

Plaintiffs contend that debtor's practice of using an account in his wife's name is evidence of a manifest concealment, but cite no cases to support this proposition. Judge Barliant correctly noted that the debtor had no obligation to open an account in his own name, or to share a checking account with his wife. The Judge found that nothing the debtor did hindered or defrauded any creditors' remedy that would have otherwise been available, given that the debtor had no obligation to maintain an account, or attachable property for the benefit of judgment creditors. *Id.*

Plaintiffs also brought the related argument that debtor's counsel's statement,

during the citation to discover assets, that Ratner had no evidence of pass books, check books, or other funds on deposit, and no checking account, was evidence of intent to conceal. Judge Barliant disagreed, finding that this statement was not relevant to the issue of concealment. *Id.* Judge Barliant found that given the fact that the debtor did not have an account, and that his deposit of funds into his wife's account represented a transfer, counsel's testimony was not inaccurate, or evidence of concealment, and the court agrees with this reasoning.

### The Mohawk Property

Less than one month before his bankruptcy Ratner acted as a co-borrower with his wife on a home equity loan line of credit, which was secured by her property on Hudson Avenue. Ratner testified that his wife could not obtain the loan without his acting as co-borrower. Ratner's wife used the proceeds of the loan to purchase the Mohawk property. Plaintiffs contend that Ratner had an interest in the loan proceeds, which he transferred to his wife so that she could acquire the Mohawk property. Post trial plaintiffs' discovered that the checks issued by the lender for the home equity loan proceeds were imprinted with the names of the debtor and his wife. Plaintiffs argue that this fact suggests that the lender viewed the proceeds as being jointly owned and controlled by the debtor and his spouse.

Plaintiffs argue that a debtor who acts as a co-borrower while insolvent has made a transfer under § 727 of the Code. Plaintiffs admit that there is no legal authority to support their theory, but suggest that support for their position can be gleaned from case law. This court disagrees.

■ The question of whether Ratner's act amounted to a transfer is a question of law, for which the District Court conducts a *de novo* review. *See In re Mader*, 108 B.R. 643 (N.D.Ill.1989). This court finds that Judge Barliant correctly concluded that plaintiffs' position was not

---

concerns a question of fact, whether or not the debtor was insolvent at the time of the transfer.

This fact question was at issue throughout these entire proceedings.

supported by case law. (See, Tr. June 12, 1990 at p. 4). As the Judge noted, the transfers in *Smiley* and *Wieboldt* concerned not the co-signing of notes, but giving liens, or placing liens on property. There is no legal authority to support plaintiffs' position that a debtor who acts as a co-borrower while insolvent has made a transfer under § 727 of the Code, and this court would have to reach too far to make the finding plaintiffs seek.

■ With respect to plaintiffs' arguments regarding the imprinted checks, again, this is a new argument which should have been raised before the trial court. The court will not consider this argument on appeal. Plaintiffs do not explain why their additional "evidence" of a transfer was not discovered before trial. Plaintiffs were certainly aware of the fact that the loan proceeds in question were of some importance to their case.

The court also notes that even if this evidence had been presented at trial and the plaintiffs were able to establish that a transfer took place, it is doubtful that the outcome would have been any different, given Judge Barliant's consistent findings that there was no evidence that Ratner intended to conceal, delay, or hinder his creditors. Hence, the court finds that Judge Barliant's ruling with respect to this issue was also correct.

### Post–Trial Motions
### Leave To Amend

Just before trial plaintiffs brought a motion to amend their complaint. The court denied the motion, but indicated that it would be receptive to post-trial amendment if the evidence introduced at trial demonstrated additional violations of the § 727 of the Code. Plaintiffs subsequently sought leave to amend their complaint at the conclusion of trial. The motion was denied by the bankruptcy court:

I'll deny the motion to file an amended complaint simply because the matters referred to in the amended complaint were presented at trial, and I've already found and see no reason to change my finding. The proof does not support the allega-

tions in that amended complaint. At a minimum, in each case, there's no evidence of intent to hinder, delay, or defraud creditors with respect to any of the matters raised in the pleadings, in the proposed pleadings.

(Tr. June 12, p. 5).

Plaintiffs amended complaint presented numerous arguments concerning why the facts admitted into evidence at trial showed that denial of discharge was proper under § 727(a)(3), (a)(4)(A) and (a)(5) of the Code.

Under § 727(a)(3) of the Code, denial of the discharge is proper if:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act, or failure to act was justified under all of the circumstances of the case....

Under § 727(a)(4)(A) and (a)(5), denial is proper if

(4) the debtor knowing and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

Plaintiffs argue that Judge Barliant's denial of the motion to amend was in error because the evidence at trial showed that Ratner's motion for discharge of debt should have been denied under the above provisions of the statute. In their reply brief, plaintiffs raise the additional argument that Judge Barliant applied the wrong standard in his review in determining whether the discharge was deniable under § 727(a)(3).

■ Once judgment has been entered in a case, leave to amend is not automatic. Nonetheless, even under the abuse of discretion standard, the reasons for denial of a motion to amend the complaint must be valid and supported by the record. *See e.g., Amendola v. Bayer*, 907 F.2d 760, 762 (7th Cir.1990). In the instant

case Judge Barliant denied the motion to amend because he believed that providing plaintiffs' with an opportunity to amend would be futile. This court is unable to determine whether that ruling was an abuse of discretion because of the limited nature of Judge Barliant's ruling with respect to the motion to amend.

For example, it is unclear whether Judge Barliant really found in his oral rulings that denial of discharge under § 727(a)(3), which concerns the accuracy of the debtor's records, was not proper. While the bankruptcy court found that the debtor was able to account for substantially all of the funds received and disbursed during the year proceeding bankruptcy with respect to Dalia Ratner's checking account, we are unable to determine whether this ruling also meant that all of Ratner's records were in order.

Also while § 727(a)(3) does not mention debtor's intent, Judge Barliant denied the motion to amend because he found "at a minimum" no evidence of intent to hinder, delay or defraud. Given the limited nature of Judge Barliant's ruling, this court cannot determine what provisions of the statute the bankruptcy court applied this standard to. On remand, the bankruptcy court must provide a written ruling explaining why the motion to amend was denied with specific findings of fact, and explain why Ratner's debt was not dischargeable under § 727(a)(3), (a)(4)(A), and (a)(5) of the Code.

### The Motion for a New Trial

Plaintiffs' motion for a new trial was based on the alleged "introduction of last minute exhibits presented by the defendants which indicated that the Mohawk property was purchased with funds procured from the home equity line of credit." Judge Barliant denied plaintiffs' motion on June 12, 1990.

 The decision of a trial judge to grant or deny a new trial is left to the sound discretion of the trial judge, and his decision will be reversed only if there is an abuse of discretion. *Davis v. FMC Corp.,* 771 F.2d 224 (7th Cir.1985). For the reasons explained by Judge Barliant, the court finds that the motion for a new trial was properly denied. (*See,* Tr. June 12, 1990).

The court also notes that plaintiffs had a full and fair opportunity to conduct discovery, and could have asked for a continuance if they were surprised by any evidence presented in the case. Plaintiffs had a full and fair opportunity to litigate their case, and therefore must bear responsibility for any failure to produce or find any additional evidence that might have supported their arguments.

### The Motion for Sanctions

 Plaintiffs' motion for sanctions for debtor's incorrect answer on interrogatory, and errors in the joint pre-trial order, was also properly denied, and the reasons for that denial were fully explained by Judge Barliant. (*See,* Tr. June 12, 1990, pp. 5–6). The bankruptcy court found that sanctions under Rule 11 were not proper because any failure to disclose debtor's interest in the safety deposit box was based on a misunderstanding. Judge Barliant found that given these facts, Ratner's answer was not unreasonable, and this court agrees. In addition, we agree that any error on debtor's attorney's part, while evidence of careless lawyering, was not so egregious that it was sanctionable. This court finds that Judge Barliant's denial of the motion for sanctions under Rule 11 was reasonable.

 Plaintiffs also sought sanctions under Rule 16(f) for an error in the joint pre-trial order. Ratner stated that the closing date on the Mohawk property was September of 1988, when the actual closing date was November 11, 1988. The court denied plaintiffs' motion for sanctions because he found no evidence that the error showed a lack of good faith pursuant to Rule 16(f). Plaintiffs have not presented any evidence or argument which shows that this finding was in error, and the court affirms Judge Barliant's ruling.

### Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is affirmed in part, and remanded in part.