**In re William Russell INGALLS, Debtor.**

**Lois Jean Huchteman, Plaintiff,**

**v.**

**William Russell Ingalls, Defendant.**

**Bankruptcy No. 02–72357.**
**Adversary No. 02–7186.**

United States Bankruptcy Court, C.D. Illinois.

Aug. 4, 2003.

Donald R. Schuering, Quincy, IL, for Debtor.

William F. Nissen, Quincy, IL, trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter is before the Court on Plaintiff's Complaint to Determine Dischargeability of Debt or to Object to Discharge filed on September 24, 2002 and amended on December 4, 2002, and Defendant's Amended Answer thereto filed November 21, 2002 and amended on December 12, 2002. A trial was held on May 8, 2003.

Plaintiff and Debtor were married on August 27, 1983, in Adams County, Illinois. The parties had two children—one born in May, 1987, and the other born in December, 1991. On May 10, 2000, the Circuit Court of Knox County, Missouri ("the divorce court") entered an agreed Judgment and Order of Decree of Dissolution of Marriage ("the Decree") which incorporated the parties' Property Settlement and Separation Agreement ("the Settlement Agreement"). Pursuant to the Decree, Debtor was ordered to pay certain marital indebtedness, including Citizens Bank of Edina (White Oak Farm Debt) in the amount of $55,000 plus interest due, and Mastercard in the amount of $11,793. Section 10, paragraph c of the Settlement Agreement provides as follows:

(c) *Indemnification for Payment of Debts:* Petitioner and Respondent hereby agree to indemnify and hold harmless the other and to defend him or her from and against all claims and liabilities and will reimburse the other for any and all expenses made or incurred by the other, either directly or indirectly, including a reasonable attorney's fee, as a result of his or her failure to pay or otherwise satisfy the specific debts and liabilities assumed by each herein.

Petitioner and Respondent further agree that as to each other the obligations set forth herein shall not be dischargeable in bankruptcy and Petitioner and Respondent shall be able to proceed against each other should either one of them attempt to file a bankruptcy action. It is the intent of the parties to agree to indemnify each other as to their respective obligations set forth above.

Settlement Agreement *at* p. 29.

On June 3, 2002, Debtor filed his voluntary Chapter 7 petition in bankruptcy. From the time of entry of the Settlement Agreement until his bankruptcy filing, Debtor made three payments totaling $150 on the subject indebtedness. On September 24, 2002, Plaintiff filed her Complaint to Determine Dischargeability of Debt or to Object to Discharge. Count I of Plaintiff's Complaint alleges that the subject debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Count II asserts nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A). Count III asks for the denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5). Count IV seeks the denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

 A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. *In re Garman,* 643 F.2d

1252, 1257 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). Consequently, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start. *In re Johnson,* 98 B.R. 359, 364 (Bankr.N.D.Ill.1988) (citation omitted). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt nondischargeable. *See Johnson, supra,* 98 B.R. at 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.") (citation omitted). The plaintiff has the burden of proving the objection. *See* Fed. R.Bankr.P. 4005; *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983) (the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff). The objector must establish all elements by a preponderance of the evidence. *In re Scott,* 172 F.3d 959, 966–67 (7th Cir.1999).

Pursuant to 11 U.S.C. § 727(a)(2)(A), a court will grant a debtor a discharge unless the plaintiff can prove by a preponderance of the evidence that the debtor:

> (2) with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition . . .

11 U.S.C. § 727(a)(2)(A).

■■■■ Denial of discharge under this section requires proof of actual intent to hinder, delay or defraud a creditor. *In re Snyder,* 152 F.3d 596, 601 (7th Cir.1998); *In re Krehl,* 86 F.3d 737, 743 (7th Cir. 1996); *In re Smiley,* 864 F.2d 562, 566 (7th Cir.1989). "[P]roof of harm is not a required element of a cause of action under Section 727." *Id.* at 569. In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct." *In re Ratner,* 132 B.R. 728, 731 (N.D.Ill.1991) (*quoting In re Reed,* 700 F.2d 986 (5th Cir.1983)). The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *See Smiley, supra,* 864 F.2d at 566. Actual fraudulent intent can be inferred from extrinsic evidence. *Id.; Krehl, supra,* 86 F.3d at 743; *In re White,* 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." *Krehl, supra,* 86 F.3d at 744 (citation omitted). "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998) (citations omitted).

In order to prevail against the Debtor on her § 727(a)(2)(A) claim, the Plaintiff must prove two things: (a) property was transferred, removed, destroyed, mutilated, or concealed, and, if proven, (b) that the Debtor had an intent to hinder, delay, or defraud his creditors.

■■■■ Section 727(a)(5) of the Bankruptcy Code provides that "the court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities . . ." There are two stages of proof with respect

to § 727(a)(5). *In re Bryson*, 187 B.R. 939, 955 (Bankr.N.D.Ill.1995). First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Id.* Second, if the party objecting to the discharge meets its burden, then the debtor is obligated to provide a satisfactory explanation for the loss. *Id.* A debtor's explanation must consist of more than vague, indefinite, and uncorroborated reasons; a satisfactory explanation is one that convinces the bankruptcy court. *In re Hasan*, 245 B.R. 550 (Bankr.N.D.Ill.2000). The inquiry under § 727(a)(5) is not limited to events or transactions which have occurred within a specific number of months or years before the bankruptcy filing. *In re Buzzelli*, 246 B.R. 75, 117 (Bankr.W.D.Pa.2000).

■ In this case, the evidence was insufficient to deny Debtor's discharge under either § 727(a)(2)(A) or § 727(a)(5). Debtor admitted giving one shotgun to each of his two minor sons; Debtor testified that he sold all of his remaining guns except for one, and that he so testified at his first meeting of creditors. Debtor also admitted that he gave to his friend John Mango several stuffed animal mounts for purposes of safekeeping. There was no evidence that Debtor concealed these transfers, nor any convincing evidence that the transfers were made to hinder, delay, or defraud creditors.

■ Plaintiff asserts that Debtor's inability to explain the loss of assets awarded to him in the divorce subjects Debtor to denial of his discharge under 11 U.S.C. § 727(a)(5). Plaintiff contends that Debtor was awarded marital property valued at $36,500 in May, 2000, yet, at the time he filed bankruptcy on June 3, 2002, Plaintiff listed personal property with a total value of $2,680.

The personal property awarded to Debtor in the dissolution proceedings consisted primarily of guns, hunting equipment, and hunting memorabilia. Debtor testified that the values assigned to each item of property were not based upon appraisals. Rather, the values were selected in order to demonstrate parity between the property being awarded to Plaintiff and to the Debtor. Further, Debtor testified that he sold a 1995 Ford F150 truck in May, 2000, for $6,000, and that the proceeds were used to pay back child support. Plaintiff offered very little by way of rebuttal.

Inasmuch as the burden of proof is high and the evidence of Debtor's violations of § 727 were not especially convincing, the Court finds in favor of the Debtor on Counts 3 and 4 of the Complaint.

11 U.S.C. § 523(a)(15) provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ...; or

(B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor(.)

■ To prevail under § 523(a)(15), the debt in question must be other than the

type set forth in § 523(a)(5), that was awarded by a court in the course of a divorce proceeding or separation. *In re Paneras*, 195 B.R. 395, 403 (Bankr.N.D.Ill. 1996) *citing In re Silvers*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995). Once this is established (and it is not disputed in our case), the burden of proving that the debt falls within either of the two exceptions to nondischargeability rests with the debtor. *In re Crosswhite*, 148 F.3d 879, 884–85 (7th Cir.1998). Hence, once the creditor's initial proof that the claim falls under Section 523(a)(15) of the Bankruptcy Code is made, the debt is excepted from discharge and the debtor is responsible for the debt unless the debtor can prove either of the two exceptions, subpart (A), the "ability to pay" test, or (B), the "detriment" test. *Id.*, 148 F.3d at 885.

■ If the debtor can show the inability to pay the debt, the examination stops and the debtor prevails. The debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. *In re Hill*, 184 B.R. 750, 754 (Bankr.N.D.Ill. 1995). Because this language mirrors the disposable income test found in 11 U.S.C. § 1325(b)(2), most courts have utilized an analysis similar to that used in determining disposable income in Chapter 13 cases. *Hill, supra* at 755; *In re Smither*, 194 B.R. 102, 108 (Bankr.W.D.Ky.1996); *In re Carroll*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995); *In re Phillips*, 187 B.R. 363, 369 (Bankr.M.D.Fla.1995); *In re Hesson*, 190 B.R. 229, 237 (Bankr.D.Md.1995). However, the utilization of the "disposable income test" in the context of § 523(a)(15) has been questioned, and one scholar has recently opined that use of the test makes little sense:

> If one understands that § 523(a)(15) dischargeability actions are limited to chapter 7 cases because such debts are discharged under the chapter 13 "super-discharge," then one must conclude that a chapter 7 debtor will never have disposable income. If a debtor had money left over after meeting his or her fixed, monthly expenses, that person would have filed a chapter 13 case or would have been the subject of a motion to dismiss his or her chapter 7 for abusing the privilege of bankruptcy under § 707(b) of the Code.
>
> ... As a result, some courts have rejected the practice of basing a debtor's ability to pay on a " 'snap-shot' which fails to take into account impending changes in the scope of the debtor's financial obligations."

Peter C. Alexander, *Building "A Doll's House": A Feminist Analysis of Marital Debt Dischargeability in Bankruptcy*, 48 Villanova Law Revenue, 381, 407 (2003) (citations omitted).

In *In re Huddelston*, 194 B.R. 681 (Bankr.N.D.Ga.1996), Judge W. Homer Drake, Jr. concluded that a disposable income analysis similar to that set forth in § 1325(b)(2) should be considered in the analysis of dischargeability under § 523(a)(15), but that such a "single faceted inquiry cannot encompass the totality of a court's consideration in applying section 523(a)(15)." *Id.* at 687–688 (citation omitted).

Judge Drake proceeded to draw corollaries between § 523(a)(15) and § 523(a)(8), which deals with the dischargeability of student loans. Citing precedent, Judge Drake concluded that "[j]ust as the hardship exception governing student loans demands a multi-factored approach ... so must the standard for section 523(a)(15) encompass a variety of considerations." *Id.* at 688 (citations omitted).

At a minimum, the Court finds that the text and purpose underlying section

523(a)(15) require it to determine the debtor's "ability" to pay his divorce-related obligations by taking into account:

(1) the debtor's "disposable income" as measured at the time of trial;

(2) the debtor's opportunities for more lucrative employment;

(3) the extent to which the debtor's burden of debt will be lessened in the near term; and

(4) the extent to which the debtor previously has made a good faith effort to fully employ himself and to satisfy the debt in question.

In the same manner that a totality of circumstances has proven the most accurate gauge of a debtor's "ability to pay" his student loans, so must courts give consideration to a debtor's current circumstance, prospect for change, and degree of effort to improve his situation, before concluding that he lacks the "ability to pay his divorce-related obligations." (footnote omitted). Absent such an expansive inquiry, no certain conclusion may be had regarding the debtor's true capacity to satisfy those debts which came as a consequence of his divorce.

*Id.* at 688–689.

Judge Drake proceeded to find the debt in *Huddelston* nondischargeable, largely because the debtor had voluntarily chosen under-employment.

■ In the case at bar, it appears superficially that the Debtor lacks the ability to pay the subject indebtedness. Following the trial, the Court ordered the parties to submit statements of income and expenses, and Debtor's statement suggests that he and his current wife have monthly household expenses which exceed their income. However, as is always the case when parties produce a budget, it tends to corroborate the contentions of the party producing the statement. Debtor's statement in this case shows a monthly deficit of $686.02 per month. Thus, if the Court accepts the statement on its face, the subject debt is dischargeable pursuant to § 523(a)(15)(A). However, in scrutinizing the individual entries and the statement as a whole, it does not appear to the Court that it would be impossible for the Debtor to pay the debt in question in installments and for the Debtor and his wife to provide for the reasonably necessary maintenance and support of the household. In other words, while the statement does not demonstrate large sums of disposable household income or manifestly excessive expenditures, an analysis of the statement does indicate that the Debtor could trim or eliminate various household expenditures without undermining the support and maintenance of the household.

The case at bar is a excellent example to buttress Judge Drake's conclusion that the disposable income test, by itself, is an inadequate basis upon which the Court should rely in determining dischargeability under § 523(a)(15)(A). While the Debtor in this case in not manifestly under-employed, as was the case in *Huddelston, supra,* his evident dereliction in making any meaningful effort to satisfy the obligations in question deserves a good deal of weight by the Court.

The Decree was entered on May 10, 2000. In the Decree, Debtor agreed to assume and pay the debt in question. Debtor also agreed that his obligation to pay the debt in question should not be dischargeable in bankruptcy. Further, it was the explicit "intent of the parties to agree to indemnify each other as to their respective obligations..." Settlement Agreement *at* p. 29.

A short two years later, Debtor filed his petition in bankruptcy and obtained a discharge without ever having made any

meaningful effort to pay the obligation. Under circumstances such as these, the Court's equitable powers entitle it to require the Debtor to tighten his belt. Accordingly, the Court finds that the Debtor has the ability to repay the subject indebtedness, and the inquiry proceeds to Section 523(a)(15)(B).

If it is found that the debtor can afford to make the payment, either in a lump sum or in installments over time, then the inquiry proceeds to § 523(a)(15)(B) where the debtor then must show that the benefit to the debtor from not having to pay the debt at issue is greater than the detrimental effects on the creditor—the spouse, former spouse, or child—who then must pay the debt. *In re Crosswhite, supra,* 148 F.3d at 885.

Plaintiff and her current husband show monthly net income of $5,749 and monthly household expenses of $5,873. They allocate nothing for vacations, gifts, or grooming, and they designate a modest $250 per month for food for the household of four. Plaintiff's spouse greatly out-earns her. Neither Plaintiff nor her spouse have filed for bankruptcy, so they are obligated on certain unsecured debts.

Plaintiff does not have the ability to repay the debts in question. Admittedly, Plaintiff and her husband earn more than Debtor and his wife. However, the equities of the case strongly favor the Plaintiff. Plaintiff has primary physical custody of the parties' two minor children. More importantly, Debtor voluntarily undertook the subject obligation and never made a meaningful attempt to pay the debts before filing bankruptcy and remarrying. While such an equitable factor should never render a debt nondischargeable where a debtor truly would be unable to maintain and support himself and his family, such a factor should certainly be given weight in evaluating which party should rightfully

bear the burden of repayment in such a case. Here, Debtor undertook the obligation, made the promise, and filed bankruptcy to rescind the obligation and revoke the promise, without having satisfied, or meaningfully tried to satisfy, his obligation to Plaintiff. Under these circumstances, the Court finds that the benefit of the discharge is outweighed by the detrimental consequences to the Plaintiff. Accordingly, the subject debts are deemed nondischargeable under Section 523(a)(15).

Section 523(a)(2)(A) of the Bankruptcy Code provides:

(a) A discharge under section 727... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition(.)

11 U.S.C. § 523(a)(2)(A).

In order to prove a case under this provision, courts have traditionally required a plaintiff to prove by a preponderance of the evidence that (i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite *scienter,* i.e. he actually intended to deceive the plaintiff, and (iii) to his detriment, the plaintiff justifiably relied on the representations. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Mayer,* 51 F.3d 670, 673 (7th Cir.1995), *cert. denied* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *In re Sheridan,* 57 F.3d 627, 635 (7th Cir.1995); *In re Scarlata,* 979 F.2d 521, 525 (7th Cir.1992); *Gro-*

*gan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the Seventh Circuit has recently held that "actual fraud" is not limited to misrepresentation, but may encompass " 'any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another.' " *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir.2000) *quoting* 4 Lawrence P. King, *Collier on Bankruptcy,* ¶ 523.08(1)(e), p. 523–45 (15th ed. Revised, 2000).

In the parties' Settlement Agreement, Debtor agreed to pay the subject debts. Debtor also agreed that the debts should not be dischargeable in bankruptcy and that either party should be able to proceed against the other should either one of them attempt to file bankruptcy. Finally, the parties acknowledged that it was their intent to indemnify each other as to their respective obligations.

 A waiver of a bankruptcy discharge is unenforceable. *In re George,* 15 B.R. 247, 248–249 (Bankr.N.D.Ohio 1981). However, it is clear that, by entering into the Settlement Agreement, Debtor made a false statement which he knew to be false. Debtor had no intention of paying the subject indebtedness when he signed the Settlement Agreement. As indicated above, three payments totaling $150 were made during the two years in between the execution of the Settlement Agreement and the filing of Debtor's petition in bankruptcy. Debtor has maintained the same employment since early 2000. There was no evidence of any unexpected adverse financial turn of events which rendered Debtor unable to fulfill his promise. Debtor knew when he made the statements that they were misrepresentations, and Plaintiff relied on those misrepresentations to her detriment. This was precisely the kind of "deceit, artifice, trick, or design... used to circumvent and cheat another" which mer-

its a finding of nondischargeability under § 523(a)(2)(A). Accordingly, the subject debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Count I of Plaintiff's Complaint be and is hereby granted, and the subject indebtedness be and is hereby declared nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

IT IS FURTHER ORDERED that Count II of Plaintiff's Complaint be and is hereby granted, and the subject indebtedness be and is hereby declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

IT IS FURTHER ORDERED that Count III of Plaintiff's Complaint be and is hereby dismissed, and that Debtor's discharge in bankruptcy be and is hereby allowed, and that Debtor's discharge in bankruptcy be and is hereby not disallowed under to 11 U.S.C. § 727(a)(5).

IT IS FURTHER ORDERED that Count IV of Plaintiff's Complaint be and is hereby dismissed, and that Debtor's discharge in bankruptcy be and is hereby not disallowed under 11 U.S.C. § 727(a)(2)(A).